# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DANIEL OSAZUWA, JR.,
            *Defendant-Appellant.*

No. 08-50244

D.C. No.
CR-00414-DSF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
February 2, 2009—Pasadena, California

Filed May 7, 2009

Before: Harry Pregerson, Susan P. Graber, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Graber

5365

## COUNSEL

Elizabeth A. Newman, Deputy Federal Public Defender, Los
Angeles, California, for the defendant-appellant.

David P. Kowal and Benjamin R. Barron, Assistant United States Attorneys, Criminal Division, Los Angeles, California, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

Defendant Daniel Osazuwa was convicted of assaulting a federal prison guard while he was incarcerated for failing to pay restitution associated with a bank fraud conviction. Defendant and the guard, who were the only two eyewitnesses, unsurprisingly offered different accounts of the events. The government cross-examined Defendant concerning his veracity. Defendant challenges the government's use, as impeachment evidence, of the facts underlying his bank fraud conviction. We hold that the district court abused its discretion in admitting that evidence and, accordingly, reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

Defendant was convicted of bank fraud in 2003. He was sentenced to one day in jail, restitution, and a period of supervised release. His supervised release was revoked in 2007 for failure to pay restitution and, consequently, he was sentenced to 90 days of incarceration at the Metropolitan Detention Center ("MDC") in Los Angeles.

The incident in question occurred three weeks before Defendant's scheduled release date. Defendant had been transferred to a transitional unit for inmates whose releases were imminent. Officer Oscar Medina testified at trial that, sometime in the morning, he saw Defendant wearing green prison clothing, rather than the khaki clothing that inmates in the transitional unit are required to wear. Medina asked

Defendant to change into khaki clothes. The next time Medina saw Defendant, he was still wearing green clothing, so Medina again asked him to change. Shortly thereafter, Medina saw Defendant grab a loaf of bread from the kitchen, which was against MDC's rules. Medina shouted at Defendant to drop the bread, which Defendant did. Medina testified that Defendant cursed at him, but Defendant denied swearing at Medina. Medina called MDC's Activities Lieutenant, who instructed Medina to secure Defendant in his cell so that the Lieutenant could question him about the incident. Another lieutenant checked Defendant's disciplinary record and reported to Medina that Defendant was a "moderate inmate without any prior incidents." When the Activities Lieutenant did not arrive, the second lieutenant gave Medina permission to unlock Defendant's cell and explain to him that he would be placed in official lockdown status if he refused to change his clothing.

From this point on, Defendant's and Medina's versions of the events diverge considerably. Medina testified that when he entered the cell, Defendant stood up and clenched his fists in a fighting position, prompting Medina to activate his body alarm to call for assistance. Medina stated that Defendant "launched" forward and threw two punches, the second of which hit Medina in the back of the head when he turned his face to avoid being hit. Medina responded with a "bear hug" to stop the punches, but Defendant moved forward and Medina lost his footing, causing both men to fall. Medina hit his head on the cell floor and blacked out for a few seconds. When he came to, he testified, Defendant was spitting on him. Medina got up, pinned Defendant to the cell wall, and let the officer who arrived to assist Medina in removing Defendant from the cell. Medina suffered a bruised rib, a swollen hand, and a cut behind his ear.

By contrast, Defendant testified that Medina was frowning when he entered the cell, so Defendant walked toward him. Medina was talking fast, so Defendant patted him and told

him to relax. Medina responded to the patting by hitting Defendant's hand back. In Defendant's version, Medina wobbled while pushing Defendant's hands away and grabbed Defendant's shirt for balance, causing both men to fall. Defendant denied ever punching Medina, "launching" forward at him, or spitting in his face.

On direct examination, Defendant was asked what sentence of incarceration he had received for his 2003 bank fraud conviction. Defendant truthfully answered that he was sentenced to, and served, one day in jail. On cross-examination, the government asked a series of questions related to the dishonest conduct that led to Defendant's bank fraud conviction:

> Q:  Mr. [Osazuwa,] you have been convicted of lying before, haven't you?
>
> A:  Lying?
>
> Q:  Yes. Lying.
>
> A:  I wouldn't — I don't understand. Could you —
>
> Q:  Lying means you don't tell the truth.
>
> A:  I can't — I pled — I plead [sic] to fraud, yes, but not lying.
>
> Q:  Well, weren't you lying as part of your bank fraud?
>
> A:  To whom?
>
> Q:  Well, you tell us.
>
> A:  Tell you?
>
> Q:  To anyone. Who were you lying to as part of your bank fraud, sir?

A:  Oh, to the bank, yes.

Q:  To the bank?

A:  Yes.

Q:  So you did lie to the bank?

A:  Yes. To —

Q:  To get some money; right?

A:  Yes.

Q:  In fact, you lied about who you were to the bank to get some money; right?

A:  Yes.

Q:  You presented a bank in Ohio with a Visa card in another person's name; correct?

[DEFENSE COUNSEL]:   Your Honor, I am going to object to the extent of this. I think the prosecutor can ask the fact of the conviction, but nothing more.

THE COURT:   Well, no. I will allow a few more questions.

Q:  You presented a Visa card in someone else's name to a bank in Ohio; right?

A:  Yes.

. . . .

Q:  In fact, you had taken over that person's credit card account by lying —

[DEFENSE COUNSEL]:     Your Honor, again, I am going to object to the particulars of the conviction.

THE COURT:    Overruled.

Q:    In fact, you had taken over that person's credit card account by lying to the credit card company that you were, in fact, that person; isn't that right?

A:    Yes, sir.

Q:    And that's how you got the money; right?

A:    Yes, sir.

Q:    You had that person's mail delivered to your address, pretending that that was the other person's address. That's a lie, too, isn't it, sir?

A:    Yes. We are talking about 1997; right?

Q:    That's correct.

. . . .

Q:    In fact, you even admitted to your probation officer, didn't you, that you had a fake identification in another person's name; right?

. . . .

[DEFENSE COUNSEL]:    Your Honor, again I am going to object.

THE COURT:    Sustained. Why don't you move on, [Prosecutor].

Q: In fact, you also, as part of your bank fraud —
you also lied to get office space in someone
else's name; isn't that correct?

[DEFENSE COUNSEL]: Again, I am going to
object to the prosecutor going into all the details of
the conviction. [Defendant] has admitted that he was
convicted, and I don't think the prosecutor can
inquire further than what he has already. I don't
believe that the purpose of cross is to go through
everything that happened in 1997.

At this point, the district court called for a sidebar confer-
ence and acknowledged that it did not know the full contours
of the law regarding whether the underlying facts of the con-
viction could properly be used for impeachment. The court
asked the parties to submit briefing on this point and dis-
missed the jury for the day. The next morning, before the jury
returned, the court decided that the government should be
allowed to use specific instances of untruthfulness as
impeachment because Defendant had "opened the door" to
this line of questioning by attempting to minimize the serious-
ness of his conduct. This minimization occurred, in the
court's view, when Defendant (truthfully) stated that he had
served only one day in custody for the bank fraud conviction.
Therefore, the court held that Defendant had opened the door
to the evidence of prior acts that otherwise would have been
inadmissible as beyond the limits of Federal Rule of Evidence
609.

The court also ruled that the evidence was admissible under
Federal Rule of Evidence 608 as past specific instances pro-
bative of untruthfulness. The court stated that Rule 608
"clearly allows specific instances of untruthfulness to be
introduced but not to be proved by extrinsic evidence." The
court further held that the extent of the questioning was not
improper because it had taken only a few minutes, but that the
issue whether Defendant had lied to his probation officer was

irrelevant and could not be mentioned again. After the jury returned, the court gave a limiting instruction about the proper use of the impeachment evidence. The prosecutor continued cross-examination, asking Defendant whether he had given a false name on two specific occasions, and then moved on to another topic. The government did not mention bank fraud in its closing argument.

The jury returned a guilty verdict. Defendant timely appeals, arguing that the court impermissibly allowed the government to elicit the facts underlying his bank fraud conviction.

## STANDARD OF REVIEW

We review for abuse of discretion the district court's admission of specific acts as impeachment evidence. *United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002). We also review for abuse of discretion the district court's ruling that the defense opened the door to the introduction of evidence. *United States v. Tory*, 52 F.3d 207, 210 (9th Cir. 1995).

## DISCUSSION

A.   *Rule 608*

**[1]** Defendant first argues that the district court erred in holding that the admission of the facts underlying his bank fraud conviction was warranted under Rule 608. Rule 608 provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, *other than conviction of crime as provided in rule 609*, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or

untruthfulness, be inquired into on cross-examination of the witness . . . .

Fed. R. Evid. 608(b) (emphasis added).

The crux of Defendant's argument is that Rule 608 applies only to specific instances of conduct that were *not* the basis of a criminal conviction. Evidence relating to a conviction, he argues, is treated solely under Rule 609. For the following reasons, we agree.

We begin by noting, as one of our sister circuits has, that the interplay between Rules 608 and 609 is complex. *See United States v. Cudlitz*, 72 F.3d 992, 995 (1st Cir. 1996) ("The rules governing this subject—cross-examining a criminal defendant about prior wrongs—are among the most complex and confusing in the entire law of evidence."). We attempt here to clarify the relationship between these two rules.

**[2]** "We interpret the legislatively enacted Federal Rules of Evidence as we would any statute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993). We begin with the text of Rule 608, which we recognize is ambiguous. Defendant argues that Rule 608 exempts from its coverage a witness' prior criminal convictions and instead delegates to Rule 609 any questions relating to such convictions. The government advances a different construction of Rule 608, arguing that the rule is concerned solely with the admissibility of extrinsic evidence. In the government's view, Rule 608 provides only that, while specific instances of the conduct of a witness may not be proved by extrinsic evidence, extrinsic evidence is admissible to prove criminal convictions. Both Defendant's and the government's constructions are plausible. *See* H. Richard Uviller, *Credence, Character, and the Rules of Evidence: Seeing Through the Liar's Tale*, 42 Duke L.J. 776, 804-05, 822 (1993) (advocating for the "extrinsic evidence" reading of the rule but noting that, in a questionnaire

sent to 300 federal district judges, the responding group was "almost evenly divided" between the two readings).

**[3]** Because the plain meaning of the rule is not apparent from its text alone, we turn to legislative history. The 1972 advisory committee's notes to Rule 608(b) support Defendant's "delegation" construction of the rule. The notes provide that "[p]articular instances of conduct, *though not the subject of criminal conviction*, may be inquired into on cross-examination" and "*[c]onviction of crime* as a technique of impeachment *is treated in detail in Rule 609, and here is merely recognized as an exception to the general rule excluding evidence* of specific incidents for impeachment purposes." Fed. R. Evid. 608 advisory committee's notes (1972) (emphases added). Those comments suggest that evidence relating to convictions falls within the exclusive purview of Rule 609.

Several of our sister circuits have also adopted Defendant's proposed construction. *See United States v. Lightfoot*, 483 F.3d 876, 881 (8th Cir.) ("Rule 608(b) . . . confers upon district courts discretion to permit witness-credibility questioning on specific bad acts *not resulting in a felony conviction*." (emphasis added)), *cert. denied*, 128 S. Ct. 682 (2007); *United States v. Parker*, 133 F.3d 322, 327 (5th Cir. 1998) ("Prior bad acts that have *not resulted in a conviction* are admissible under [Rule] 608(b) if relevant to the witness's character for truthfulness or untruthfulness." (emphasis added)); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1556 (10th Cir. 1991) ("Under [Rule] 608(b), a defendant may impeach a Government witness by cross-examining him about specific instances of conduct *not resulting in conviction* if such conduct is probative of the witness' character for truthfulness or untruthfulness." (emphasis added) (internal quotation marks omitted)).

We further recognize the unfairness that would result if evidence relating to a conviction is prohibited by Rule 609 but admitted through the "back door" of Rule 608. *See* Donald H. Ziegler, *Harmonizing Rules 609 and 608(b) of the Federal*

*Rules of Evidence*," 2003 Utah L. Rev. 635, 677 (2003) ("[I]t plainly seems unfair to forbid impeachment under Rule 609[ ] but allow the defendant to be questioned about the underlying acts under Rule 608(b).").

The government's citation to *United States v. Hurst*, 951 F.2d 1490, 1500-01 (6th Cir. 1991), is unavailing. In *Hurst*, the court permitted brief questioning under Rule 608(b) about the conduct leading to the conviction because the name of the offense, subornation of perjury, did not convey enough information to the jury to assess how the conviction related to the witness' credibility. *Id.* at 1501. Bank fraud, the name of the offense at issue here, is more self-explanatory than subornation of perjury. Moreover, the dishonesty aspect of the crime was covered adequately by the initial questioning, to which Defendant did not object. Therefore, *Hurst* is not particularly persuasive.

The government also argues on policy grounds that it does not make sense to bar inquiry into dishonest acts just because a witness was eventually convicted for them. But that argument ignores that evidence of a prior conviction for dishonest acts can be far more prejudicial to a defendant than evidence of dishonest acts that have not been held to violate the law. Under the government's interpretation, a bad act resulting in a conviction would be, in a sense, counted twice—once by presenting the bad act itself and once by presenting the conviction that flowed from it. The risk of unfair prejudice or undue emphasis is the reason why Rule 609 and its related case law carefully guide the admission of prior convictions and their underlying facts.

**[4]** Echoing the observations of the Fifth, Eighth, and Tenth Circuits, we hold that Rule 608(b) permits impeachment only by specific acts that have not resulted in a criminal conviction. Evidence relating to impeachment by way of criminal conviction is treated exclusively under Rule 609, to which we now turn.

B.    *Rule 609*

**[5]** The next question is whether the impeachment evidence was properly admitted under Rule 609, which provides in part: "[E]vidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).

**[6]** It is undisputed that bank fraud is an act of dishonesty, so the offense falls under Rule 609(a)(2). But the scope of inquiry into prior convictions is limited. " '[A]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction.' " *United States v. Sine*, 493 F.3d 1021, 1036 n.14 (9th Cir. 2007) (quoting *United States v. Rubio*, 727 F.2d 786, 797 n.5 (9th Cir. 1983)). Generally, "only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility." *United States v. Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996); *see also United States v. Gordon*, 780 F.2d 1165, 1176 (5th Cir. 1986) (limiting cross-examination to "the number of convictions, the nature of the crimes and the dates and times of the convictions" and excluding "the particular facts of [the defendant's] previous offenses").

**[7]** The scope of the inquiry is limited because of the unfair prejudice and confusion that could result from eliciting details of the prior crime. *See United States v. Robinson*, 8 F.3d 398, 410 (7th Cir. 1993) (holding that the impeaching party is not "entitled to harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case") (internal quotations marks omitted)); *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir. 1987) ("The problem with excessive

references to the details of prior criminal conduct is that the jury is likely to infer that the defendant is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life.”).

The government does not argue in this case that its cross-examination of Defendant stayed within the established bounds of inquiry under Rule 609. It instead asserts that Defendant “opened the door” to questions about his specific dishonest acts because his testimony about serving only one day in prison minimized the seriousness of his bank fraud offense. We disagree.

**[8]** In a criminal prosecution, the government may introduce otherwise inadmissible evidence when the defendant “opens the door” by introducing potentially misleading testimony. *United States v. Beltran-Rios*, 878 F.2d 1208, 1212 (9th Cir. 1989). A defendant may open the door by minimizing, or attempting to explain away, a prior conviction. *See, e.g.*, *United States v. Baylor*, 97 F.3d 542, 545 (D.C. Cir. 1996) (noting that “a witness may ‘open the door’ to more extensive cross-examination by attempting to minimize the conduct for which he was convicted”). If a defendant opens the door, the prosecution may “introduce evidence on the same issue to rebut any *false* impression that might have resulted from the earlier admission.” *Sine*, 493 F.3d at 1037 (internal quotation marks omitted).

In *Sine*, we held that a defendant’s accurate testimony did not open the door to the introduction of otherwise inadmissible evidence by the government. *Id.* The defendant had stated in his direct testimony that a judge “ ‘wrote up some bad things about [him]’ ” in an order from a prior criminal contempt proceeding that was inadmissible in his criminal fraud trial. *Id.* On cross-examination, the government questioned the defendant using specific phrases that appeared in the judge’s order, such as “chicanery,” “mendacity,” and “rife with deceit.” *Id.* at 1029. We held that the defendant’s “limit-

ed" *accurate* testimony about the judge's order "was insuffi-
cient to open the door to the government's otherwise
impermissible references to the order, as [the defendant] did
not introduce an inaccurate portrait of the order itself." *Id.* at
1037. We rejected the government's argument that the defen-
dant's testimony had painted a picture of " 'selflessness and
hope,' " thereby opening the door to use of the inadmissible
order. *Id.* "Presenting a theory of the case that can be effec-
tively rebutted by otherwise-inadmissible evidence," we held,
"does not by itself open the door to using such evidence; only
partial, misleading use of the evidence can do so." *Id.* at 1038.

**[9]** *Sine* controls here. Defendant was asked how much
time he had spent in prison for bank fraud, and he accurately
answered "one day." Defendant did not attempt to explain
away or otherwise minimize his conviction, as did the defen-
dants in the cases cited by the government. *See, e.g.*, *United
States v. Jackson*, 310 F.3d 1053, 1053-54 (8th Cir. 2002)
(per curiam) (holding that where a defendant testified that he
was previously convicted for attempted capital murder
because " '[t]here's no self-defense law in Arkansas,' " the
prosecution could elicit, on cross-examination, several details
of the crime that were inconsistent with the implication that
the defendant had acted in self-defense (alteration in origi-
nal)); *United States v. Perry*, 857 F.2d 1346, 1352 (9th Cir.
1988) (holding that the defendant opened the door when he
attempted to "explain away" his prior convictions "by offer-
ing his own version of the underlying facts" (internal quota-
tion marks omitted)). Defendant did not testify about the
underlying facts of, or create a false impression about, his
conviction; he truthfully answered the question asked. Under
*Sine*, that answer was insufficient to open the door to ques-
tions about the details of his offense. If the government
believed that Defendant's answer about incarceration risked
minimizing his crime in the eyes of the jury, it could have
questioned Defendant further about the sentence, such as by
inquiring how much restitution he had to pay, rather than ask-

ing several collateral and prejudicial questions about the underlying dishonest acts.

**[10]** The government also argues that, even if it was error to admit the evidence, any error was harmless for three reasons: (1) the cross-examination consisted of only 9 of 68 pages of Defendant's trial testimony; (2) the judge gave a limiting instruction; and (3) the prosecutor did not mention the prior bad acts in closing argument. We are not persuaded. The prosecutor hammered Defendant about several specific instances in which he lied to perpetrate bank fraud. The limiting instruction was not given when the government first began its inquiry into the bank fraud acts; rather, it was given the next morning, after Defendant had already been asked about most of the dishonest acts and the jurors had had an evening to assimilate the damaging information. Even though the prosecutor did not mention these acts in its closing argument, the repeated questions about the lies Defendant told in the course of the bank fraud were likely to have influenced the jury's view of Defendant's credibility. Credibility was critical in this case because Defendant's account of the events was pitted against that of the only other eyewitness, Medina. Allowing the prosecution to repeatedly question Osazuwa about his lack of truthfulness in the course of the bank fraud prejudicially tipped the scales against Osazuwa's defense.

## CONCLUSION

In short, evidence relating to a prior conviction is not admissible under Rule 608. Evidence of a prior conviction of a crime that involves dishonesty may be admissible under Rule 609. But evidence admissible under Rule 609 for impeachment purposes may not include collateral details of the crime of conviction. A defendant does not "open the door" to otherwise inadmissible evidence by doing no more than providing a truthful answer to a direct question. Here, the improperly admitted testimony prejudiced his case.

**[11]** For these reasons, we hold that the district court abused its discretion in admitting evidence of the acts underlying Defendant's conviction for bank fraud and that the error was not harmless.[1]

REVERSED and REMANDED.

---

[1]We need not and do not reach Defendant's other arguments on appeal.