**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. STEEL A. DAVIS, Defendant-Appellant. | No. 18-10206 18-10275 D.C. No. 2:15-cr-00005-TLN-1 MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted November 14, 2019
San Francisco, California

Before: WARDLAW, W. FLETCHER, and LINN,** Circuit Judges.

Steel Davis, a National Guard veteran, appeals from his conviction on several counts of wire fraud related to the National Guard's recruitment incentive program ("G-RAP"). Davis challenges several of the district court's evidentiary rulings. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

The district court did not plainly err by not excluding the contested testimony of recruits Crystal Ackerman, Anton Jensen, Daniel Stuart, Eric Tullius, and Jaren Blair. Each witness recounted statements by Davis that either increased the likelihood that the recruit would choose to enlist or decreased the likelihood that he or she would be rejected by the National Guard. Both results increased the likelihood of a G-RAP award. The testimony of these recruits was thus "inextricably intertwined" with the charged scheme and is not inadmissible under Federal Rule of Evidence 404. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995) (holding that evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge" or is "necessary . . . in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime" is "inextricably intertwined").

Davis's assertion that he would have made these statements even without a fraudulent G-RAP scheme in order to satisfy his duties as a recruiter does not undermine the admissibility of the statements. Whether Davis's statements were legitimately part of his recruiter duties or were made in furtherance of the fraudulent scheme was a factual question for the jury, not an evidentiary one.

Similarly, recruit Bryan Gregory's account of Davis's attempt to enlist him into the G-RAP fraud is inextricably intertwined with the charged scheme. Those statements were made in furtherance of the scheme "in the course of the conduct

2

with which [Davis] was charged." *See United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992). Whether Gregory actually engaged in the fraud with Davis is of no moment. *See, e.g.*, *United States v. Sayakhom*, 186 F.3d 928, 937–38 (9th Cir. 1999), *amended by* 197 F.3d 959 (9th Cir. 1999) (allowing evidence of uncharged unlawful activity of a company under a new name as evidence of the knowledge of the illegality of the charged conduct under a different name); *United States v. Serang*, 156 F.3d 910, 915 (9th Cir. 1998) (allowing, in a mail fraud case, evidence of a co-conspirator's prior unsuccessful attempts to set fire to a restaurant).

The statement to Recruiter Zane Lowrey is distinct because it was referring to a G-RAP fraud with which Davis was not involved. Davis's perspective on how fraudulent earnings should be distributed is not direct evidence of Davis's involvement in the charged scheme. Davis's statement to Lowrey also did not provide context necessary for the prosecution to make its case. Nevertheless, the admission of Lowrey's testimony was not plain error. This is not the kind of statement that "is so clear-cut, so obvious, [that] a competent district judge should be able to avoid it without benefit of objection." *United States v. Ching Tang Lo*, 447 F.3d 1212, 1228 (9th Cir. 2006). Moreover, there is no plain error when "there is no significant possibility that the jury might have acquitted the defendant[]" had the evidence not been admitted. *United States v. Soto-Barraza*, __ F.3d __, 2020 WL 253560, at *6 (9th Cir. 2020). There is overwhelming evidence to support

Davis's conviction, including: the testimony of Davis's co-conspirators Kaps, Nattress, and Hair; testimony by fifteen nominees that they gave Davis their personal identifying information and did not know the co-conspirators who claimed them for G-RAP; and the pattern of Davis's spending, corresponding to withdrawals from his co-conspirators' accounts.

There is no merit to Davis's cursory contention that the above statements should have been excluded under Rule 403 balancing. *See* FED. R. EVID. 403. Not excluding these statements was well within the district court's discretion.

Davis next challenges the admission of statements he made to the California Highway Patrol on November 27, 2009. The impeachment testimony here is properly analyzed under Rule 609, not Rule 608. *See United States v. Osazuwa*, 564 F.3d 1169, 1174 (9th Cir. 2009) ("[E]vidence relating to convictions falls within the exclusive purview of Rule 609."); *id.* at 1175 ("[W]e hold that Rule 608(b) permits impeachment only by specific acts that have not resulted in a criminal conviction. Evidence relating to impeachment by way of criminal conviction is treated exclusively under Rule 609.").

Under Rule 609, "[a]bsent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." *Id.* at 1175 (quoting *United States v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007)); *see also* FED. R. EVID.

609. The prosecutor's questions, while not revealing Davis's criminal conviction, relate to the collateral details thereof and normally would be inadmissible under Rule 609. Nevertheless, the district court's failure to exclude this line of questioning was not plain error. Because the jury did not hear that Davis was subject to a criminal conviction for the November 27 incident, the challenged colloquy amounted to no more than Davis's denying he lied to the police. This is the type of evidence that otherwise is generally admissible. Again, we cannot say that admitting this evidence was "so obvious[] [that] a competent district judge should be able to avoid it without benefit of objection." *See Ching Tang Lo*, 447 F.3d at 1228. Moreover, the concern addressed in *Osazuwa* about double prejudice is not present here. *See Osazuwa*, 564 F.3d at 1174 (explaining that inquiry into "a bad act resulting in a conviction would be, in a sense, counted twice—once by presenting the bad act itself and once by presenting the conviction that flowed from it").

Davis also challenges the lack of a limiting jury instruction on impeachment evidence. But this is not the rare case where an erroneous jury instruction would justify a finding of plain error. *See United States v. Armijo*, 5 F.3d 1229, 1232 (9th Cir. 1993) ("Improper jury instructions will rarely justify a finding of plain error."). As discussed, the testimony of the potential recruits about Davis's statements to them are not impeachment evidence—they are direct evidence of Davis's

involvement in the charged scheme. The statement to Lowrey also was not impeachment evidence. In each instance Davis merely denied being untruthful and the prosecutor accepted his denials without more. No limiting jury instruction on impeachment evidence was necessary.

Finally, Davis argues cumulative error. For the same reasons noted, *supra*, this argument has no merit.

**AFFIRMED.**