*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2015 UT 69**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ROBBY D. ROBINSON and LISA ROBINSON,
individually and as personal representatives for the heirs of the
Estate of BRADFORD ROBINSON,
*Appellees*,

*v.*

PAUL RAY TAYLOR, M.D. et al.,
*Appellant.*

No. 20130463
Filed August 11, 2015

Second District, Farmington
The Honorable John R. Morris
No. 090700394

Attorneys:

James R. Hasenyager, Peter W. Summerill, Ogden,
Matthew J. Morrison, Andrew Tuegel, Waco, TX,
Donald J. Winder, John W. Holt, Salt Lake City,
for appellees

Michael D. Zimerman, Troy L. Booher, Julie J. Nelson, Noella A.
Sudbury, George R. Naegle, Zachary E. Peterson, Cortney Kochevar,
Salt Lake City, for appellant

Merrill F. Nelson, Alexander Dushku, Tiffany Smith, Salt Lake City,
for amicus curiae American Medical Association, Utah Hospital
Association, Utah Medical Association

Paul M. Simmons, Ryan M. Springer, Salt Lake City, for amicus
curiae Utah Association for Justice

Sean D. Reyes, Att'y Gen., Bridge K. Romano, Solicitor Gen.,
Salt Lake City, for the State of Utah

JUSTICE PARRISH authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and JUDGE TOOMEY joined.

ASSOCIATE CHIEF JUSTICE LEE filed a dissenting opinion.

Due to his retirement, JUSTICE NEHRING, did not participate herein; COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE DENO G. HIMONAS became a member of the Court on February 13, 2015, after oral argument in this matter, and accordingly did not participate.

---

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1    Robby and Lisa Robinson brought this medical malpractice lawsuit against Dr. Paul Taylor for the wrongful death of their deceased father, Brad Robinson.  After the jury found that Dr. Taylor negligently caused Mr. Robinson's death, Dr. Taylor appealed, challenging the trial court's decision to admit into evidence Dr. Taylor's felony drug conviction.[1]  We agree with Dr. Taylor and hold that evidence of Dr. Taylor's prior criminal conviction was inadmissible under rules 608 and 609 of the Utah Rules of Evidence.  Accordingly, we reverse and remand for a new jury trial.

## BACKGROUND

¶2    Dr. Taylor began treating Mr. Robinson in 2003 for chronic back pain and degenerative disc disease.  Over the next three years, Dr. Taylor prescribed various pain medications to treat Mr. Robinson's pain, including methadone, Lortab, and Demerol.  Mr.

---

[1] Dr. Taylor also challenges the trial court's decision allowing the jury to consider punitive damages and its refusal to apply the health care malpractice damages cap to the jury award.  *See* UTAH CODE § 78B-3-410.  However, after oral argument, the Robinsons filed a suggestion of mootness indicating that they are no longer seeking punitive damages.  We therefore do not address that issue.  Because we reverse and vacate the jury award, we need not address the issue of the damages cap.  However, we note that our recent decision in *United States v. Smith*, 2015 UT 68, ___ P.3d ___ provides guidance on that issue to assist the trial court on remand.

Robinson developed a drug tolerance that required successively larger doses of medication to ameliorate his pain.

¶3    During Mr. Robinson's last visit to Dr. Taylor on May 26, 2006, Dr. Taylor issued a written prescription to Mr. Robinson for a daily dosage of 140 milligrams of methadone. Two weeks later, Mr. Robinson was found dead at his home. The medical examiner determined that the cause of death was "acute methadone toxicity." The exact date of Mr. Robinson's death could not be determined, but evidence and medical testimony suggest he died on June 1 or 2, roughly a week after his last visit to Dr. Taylor. The Robinsons brought this suit against Dr. Taylor for wrongful death caused by medical malpractice.

¶4    During his deposition, Dr. Taylor testified that he had given Mr. Robinson oral dosing instructions for the methadone that differed from those reflected in the written prescription. Dr. Taylor argued that Mr. Robinson was at fault for his death because he failed to follow these oral instructions.

¶5    After Mr. Robinson's death, but prior to trial, Dr. Taylor was charged under federal law for illegally distributing a controlled substance. This charge was unrelated to Mr. Robinson's death. It arose when an individual requested a prescription for pain medication to help with a sport-related injury. Dr. Taylor met the individual in a parking lot on more than one occasion to give him prescriptions in exchange for cash. Dr. Taylor was charged with two federal felony drug counts for these acts. He subsequently pled guilty to one felony drug charge and was sentenced to prison. Due to his prison sentence, Dr. Taylor was unable to attend trial, and in lieu of direct examination, a previously recorded deposition was read to the jury.

¶6    During trial, the Robinsons sought to introduce evidence of Dr. Taylor's felony conviction in order to impeach his deposition testimony as to his alleged oral dosing instructions. Dr. Taylor filed a motion in limine to exclude evidence of the conviction. The trial court denied the motion, and Dr. Taylor's deposition describing the events surrounding his felony conviction was read into the record.

¶7    The jury found that Dr. Taylor breached the standard of care and that this breach was the proximate cause of Mr. Robinson's death. The jury awarded the Robinsons over $3 million in general damages and $300,000 in punitive damages. Dr. Taylor appealed. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶8   "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269.  Our review of the trial court's exercise of its discretion includes ensuring "that no mistakes of law affected a lower court's use of its discretion." *State v. Barrett*, 2005 UT 88, ¶ 17, 127 P.3d 682.

**ANALYSIS**

I.  THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING EVIDENCE OF DR. TAYLOR'S FELONY CONVICTION

¶9   Dr. Taylor argues that the trial court abused its discretion when it admitted his felony conviction for impeachment purposes. Dr. Taylor contends that his conviction was not admissible because his credibility was not at issue and because the prejudicial effect of the admission substantially outweighed its probative value.  We agree and hold that the trial court erred when it admitted Dr. Taylor's criminal conviction.

¶10   "When interpreting an evidentiary rule, we apply principles of statutory construction. . . . Thus, we first look to the plain language of the rule." *State v. Mead*, 2001 UT 58, ¶ 44, 27 P.3d 1115 (alteration in original) (internal quotation marks omitted).  We may also rely on interpretations of similar federal rules by federal courts to assist our own interpretation.  *See id.* ¶ 45.  In this case, the trial court admitted evidence of Dr. Taylor's felony conviction under rules 608(b), 609(a)(1), and 609(a)(2) of the Utah Rules of Evidence. We address each in turn.

*A. Rule 608(b)*

¶11  Rule 608(b) governs evidence relating to a witness' character for truthfulness.  The trial court admitted evidence of Dr. Robinson's felony conviction, reasoning that "writing a prescription under the false pretense of a doctor-patient relationship is probative of his character for truthfulness."  But Dr. Taylor contends that rule 608 does not apply because it only governs admission of impeachment evidence for those acts that have not resulted in the conviction of a crime.  We agree and hold that rule 608(b) permits impeachment only by specific acts that did not result in a criminal conviction, while rule 609 governs evidence relating to impeachment by a criminal conviction.

¶12 Whether conduct resulting in a criminal conviction may be admitted under rule 608(b) is an issue of first impression for this court. We recognize that the rules are not free from ambiguity on this matter, but the structure of our rules of evidence drives our conclusion. We begin with a discussion of the general prohibition against the admission of specific instances of conduct to prove character.[2]

¶13 As a general matter, the Utah Rules of Evidence prohibit the admission of "[e]vidence of a person's character or character trait" in order "to prove that on a particular occasion the person acted in conformity with [that] character or trait." UTAH R. EVID. 404(a)(1). This prohibition includes evidence of specific instances of conduct. *See id.* 405(b) (articulating when specific instances of conduct may be used).

¶14 Rules 608 and 609 are both exceptions to rule 404 and apply when specific instances of a witness' conduct may bear on the witness' character for truthfulness.

¶15 Rule 608(b) provides,

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Accordingly, rule 608 allows specific instances of conduct to be inquired into on cross-examination if they are probative of a witness' character for truthfulness.

---

[2] Both rules 608 and 609 are identical to the respective federal rules. When our rules of evidence are identical to the federal rules, we generally seek "to achieve uniformity between [our] rules and the federal rules"; accordingly, "this Court looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." *State v. Gray*, 717 P.2d 1313, 1317 (Utah 1986); *see also State v. Rothlisberger*, 2006 UT 49, ¶¶ 14–20, 147 P.3d 1176 (relying on federal advisory committee notes as an interpretive aid).

¶16 Rule 608 works in coordination with rule 609, which applies when "attacking a witness's character for truthfulness by evidence of a criminal conviction." *Id.* 609(a). Under both rules, specific instances of conduct are admissible for the purposes of attacking credibility. Conduct not resulting in a conviction may be inquired into on cross-examination under rule 608, while rule 609 allows evidence of conduct that has resulted in a conviction. These rules are mutually exclusive: When specific instances of conduct are the subject of a conviction, they are governed exclusively by rule 609. And if the specific acts do not involve a conviction, they are governed by rule 608. *Cf.* 28 CHARLES ALAN WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 6133 (2d ed. 2012) ("[C]riminal acts that have not been made the subject of a prosecution and conviction are controlled by Rule 608(b), not Rule 609.").

¶17 The opening phrase of rule 608(b) makes this explicit. The rule begins with the phrase "[e]xcept for a criminal conviction under Rule 609." This language specifically excludes rule 608's application to specific instances of conduct that result in a criminal conviction.[3] *See* WRIGHT & GOLD, *supra*, § 6117 ("[T]he first sentence of subdivision (b) specifically states that the admission of [conviction] evidence is determined under Rule 609, not Rule 608."). This construction of rule 608(b)'s introductory phrase is supported by the committee note to the federal rule, which provides, "Particular instances of conduct, though *not the subject of criminal conviction*, may be inquired into on cross-examination." FED. R. EVID. 608 advisory committee's note (emphasis added).

¶18 Rule 609 is the only rule that governs the admission of evidence of a criminal conviction. It applies when "attacking a

---

[3] The 2003 version of rule 608 stated this more directly: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, *other than conviction of a crime as provided in Rule 609*, may not be proved by extrinsic evidence. They may, however, . . . be inquired into on cross examination of the witness . . . ." UTAH R. EVID. 608(b) (2003) (emphasis added). The changes from this version to the current language were "intended to be stylistic only. There [was] no intent to change any result in any ruling on evidence admissibility." UTAH R. EVID. 608 advisory committee note.

witness's character for truthfulness by evidence of a criminal conviction." UTAH R. EVID. 609(a). And rule 609 gives comprehensive treatment as to the admissibility of evidence of conviction. For instance, it distinguishes the admission of a criminal conviction for a criminal defendant from other witnesses, *id.* 609(a)(1)(B), and it differentiates felonies and misdemeanors, *id.* 609(a)(1). Rule 609 also governs other evidentiary issues arising with prior convictions, such as the effects of a pardon, annulment, certificate of rehabilitation, juvenile adjudication, and the pendency of an appeal. *Id.* 609(c)–(e). Rule 608 is devoid of any guidance on these important issues.

¶19 A majority of the federal appellate courts that have discussed the interplay between federal rules 608 and 609 have interpreted them to distinguish between those specific instances of conduct that lead to a conviction and those that do not. For example, in *United States v. Osazuwa*, 564 F.3d 1169, 1173 (9th Cir. 2009), the court held that "[e]vidence relating to a conviction . . . is treated solely under Rule 609" and that "Rule 608 applies only to specific instances of conduct that were *not* the basis of a criminal conviction." *Id.* at 1173. The court further recognized that admitting evidence under rule 608 as "a bad act resulting in a conviction would be, in a sense, count[ing] [the conviction] twice—once by presenting the bad act itself and once by presenting the conviction that flowed from it." *Id.* at 1174. The court also observed, "The risk of unfair prejudice or undue emphasis is the reason why Rule 609 and its related case law carefully guide the admission of prior convictions and their underlying facts." *Id.* at 1174–75.[4]

---

[4] Other federal appellate courts have likewise observed that rule 608(b) is limited to bad acts that do not result in a felony conviction. *E.g.*, *United States v. Lightfoot*, 483 F.3d 876, 881 (8th Cir. 2007) ("Rule 608(b) . . . confers upon district courts discretion to permit witness-credibility questioning on specific bad acts not resulting in a felony conviction."); *United States v. Whitmore*, 359 F.3d 609, 620 (D.C. Cir. 2004) ("[Rule] 608(b) allows a witness's credibility to be attacked based on misconduct that, while not constituting a criminal conviction, nevertheless tends to show that the witness is untruthful."); *United States v. Parker*, 133 F.3d 322, 327 (5th Cir. 1998) ("Prior bad acts that have not resulted in a conviction are admissible under [Rule] 608(b) if relevant to the witness's character for

(continued . . . )

¶20 Secondary sources further support the same conclusion. For instance, Professors Wright and Gold state, "Rule 608 does not regulate the admissibility of criminal conviction evidence, which is the subject of Rule 609." WRIGHT & GOLD, *supra*, § 6111 n.1. They also recognize that "[s]ubdivision (b) specifically exempts from its coverage evidence of specific instances of witness conduct in the form of criminal convictions." *Id.* § 6113; *see also* R. COLLIN MANGRUM & DEE BENSON, MANGRUM & BENSON ON UTAH EVIDENCE 479 (2014) (arguing that treating evidence of specific acts relating to a criminal conviction exclusively under rule 609 "is arguably [a] better rule and reconciles the differences [between rules 608 and 609]").

¶21 We agree and accordingly hold that rule 608(b) permits impeachment only by specific acts that did not result in a criminal conviction. Therefore, the admission of Dr. Taylor's conviction under rule 608 was an abuse of discretion.

*B. Rule 609(a)(2)*

¶22 We now move to consider the other rule under which the district court admitted evidence of Dr. Taylor's conviction, rule 609. Rule 609(a) has two subsections governing admission of evidence of a criminal conviction: subsection 609(a)(1) grants courts discretion to admit some crimes and subsection 609(a)(2) requires automatic admission for certain other crimes. We begin with Dr. Taylor's challenge to the automatic admission of his criminal conviction under rule 609(a)(2). Dr. Taylor contends that its admission was an abuse of discretion because the rule only allows automatic admission of evidence when the criminal elements require proving a dishonest act or a false statement and unlawful distribution of a controlled substance involves neither. We agree. Only when the elements of the crime require proving a dishonest act or false statement can a prior conviction be automatically admitted into evidence.

¶23 The trial court held that Dr. Taylor's criminal conviction must be automatically admitted into evidence because "writing a prescription under the false pretense of the existence of a doctor-patient relationship . . . pertains to a crime involving a dishonest act

---

truthfulness or untruthfulness."); *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996) ("[T]he plain language of [rule 608(b)] allows for cross-examination of matters 'other than conviction of crime.'"); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1556 (10th Cir. 1991).

or false statement." But this is a misapplication of the rule. Although a previous version of rule 609 required the admission of a prior criminal conviction when the crime "involved dishonesty or false statement," UTAH R. EVID. 609(a)(2) (2010), our current rule has stricter requirements for mandatory admission of criminal convictions.

¶24 The current version of rule 609(a)(2) of the Utah Rules of Evidence provides that

> for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

Accordingly, rule 609(a)(2) applies to a narrow subset of criminal convictions.

¶25 Under rule 609(a)(2), only those crimes involving a statutory offense that require proving a dishonest act or false statement as an element of the crime are to be automatically admitted into evidence. The phrase "dishonest act or false statement" applies to crimes "in the nature of *crimen falsi*[,] the commission of which involves some element of untruthfulness, deceit, or falsification bearing on the accused's propensity to testify truthfully."[5] FED. R. EVID. 609 advisory committee's note (quoted approvingly in *State v. Bruce*, 779 P.2d 646, 654 (Utah 1989)). Thus, it is the elements of the criminal act that determine its admissibility, not the manner in which the offense

---

[5] We have already recognized that "federal courts and most state courts are unwilling to conclude that offenses such as . . . narcotic violations are per se crimes of dishonesty or false statement." *State v. Bruce*, 779 P.2d 646, 655 (Utah 1989) (internal quotation marks omitted); *see also Gregory v. State*, 616 A.2d 1198, 1204 (Del. 1992) (holding that the elements of the crime of possession with intent to deliver "require no proof of conduct involving lying, deceiving, cheating, stealing or defrauding"); *State v. Zaehringer*, 325 N.W.2d 754, 756 (Iowa 1982) (distribution offenses do not involve "deceit, fraud, cheating, or stealing"); *State v. Hardy*, 946 P.2d 1175, 1178 (Wash. 1997) ("Drug convictions are not crimes of 'dishonesty or false statement' like perjury or criminal fraud and thus [rule 609(a)(2)] does not apply.").

is committed. *See United States v. Lewis*, 626 F.2d 940, 946 (D.C. Cir. 1980).

¶26 While it is possible that distributing a controlled substance may be done in a deceitful manner, the offense for which Dr. Taylor was convicted, 21 U.S.C. § 841(a), does not include elements of a dishonest act or false statement as part of the statutory offense.[6] *See Lewis*, 626 F.2d at 946 (holding that 21 U.S.C. § 841(a) does not "involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2)"). Accordingly, admission of Dr. Taylor's prior conviction of a narcotics violation was improper under rule 609(a)(2).

### C. Rule 609(a)(1)(A)

¶27 The trial court also admitted evidence of Dr. Taylor's criminal conviction under rule 609(a)(1)(A). This rule allows a party to "attack[] a witness's character for truthfulness by evidence of a criminal conviction." UTAH R. EVID. 609(a)(1). But in a civil case, a felony conviction "must be admitted[] subject to Rule 403." *Id.* 609(a)(1)(A). Rule 403, provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[7] Dr. Taylor argues that admission of his conviction under this rule was also an abuse of

---

[6] The elements of 21 U.S.C. § 841(a) are (1) "knowingly or intentionally" (2) "manufactur[ing], distribut[ing], or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense," (3) "a controlled substance." *See* 21 U.S.C. § 841.

[7] The parties disagree over whether we should apply the rule 403 balancing factors articulated in *State v. Banner*, 717 P.2d 1325, 1334 (Utah 1986). In *Banner* we identified factors "to be considered when balancing probative value [of a prior conviction] against [its] prejudicial effect." *Id.* These factors were the nature of the crime, the recentness of the prior conviction, the similarity between the prior and charged crime, the importance of the credibility issue, and the need for the accused's testimony. *Id.* *Banner* was a criminal case; and, in any event, we have yet to apply these factors in any civil case. It suffices here to echo our recent explanation in *State v. Lucero*, "It is . . . unnecessary for courts to evaluate each and every [*Banner*] factor and balance them together in making their [rule 403] assessment. This is because courts are bound by the text of rule 403, not [a] limited list of considerations." 2014 UT 15, ¶ 32, 328 P.3d 841.

discretion because Dr. Taylor's credibility was not at issue. He therefore reasons that the evidence was not probative and substantially prejudiced the jury. The Robinsons respond that Dr. Taylor put his credibility at issue by claiming to have given Mr. Robinson undocumented oral dosing instructions. Since both Mr. Robinson, who is deceased, and Dr. Taylor, who was imprisoned, were unavailable for trial, they reason that the only avenue left for them to attack Dr. Taylor's testimony regarding the dosing instructions was to impeach his credibility. We agree with Dr. Taylor and hold that the district court abused its discretion by admitting Dr. Taylor's prior criminal conviction under rule 609(a)(1)(A) of the Utah Rules of Evidence because the danger of unfair prejudice substantially outweighs any probative value it may have.

1. Dr. Taylor's Criminal Conviction Had Minimal Probative Value

¶28 "The probative value of evidence is judged by the strength of the evidence[,] its ability to make the existence of a consequential fact either more or less probable[,] and the proponent's need for the evidence." *State v. Johnson*, 784 P.2d 1135, 1140 (Utah 1989) (footnote omitted) (internal quotation marks omitted). Dr. Taylor contends that his felony conviction had little probative value because it was not a crime of dishonesty admissible under rule 609(a)(2). Although this may be true, the probative value of a crime is not determined solely on whether the crime should have been admitted under rule 609(a)(2). *See United States v. Lipscomb*, 702 F.2d 1049, 1057 (D.C. Cir. 1983) (en banc) ("[C]rimes of stealth (*e.g.*, smuggling, burglary), while not quite crimes of 'dishonesty or false statement,' do reflect lack of credibility and should be admitted unless significantly prejudicial."). Indeed, the existence of rule 609(a)(1) indicates that any felony conviction is "at least somewhat probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005); *accord Lipscomb*, 702 F.2d at 1062. Even though Dr. Taylor's criminal conviction did not involve a crime of dishonesty, his willingness to violate the law does cast some doubt on his character for truthfulness. Although we acknowledge the general probative value of a prior criminal conviction, we conclude that its admission in this case was an abuse of discretion because whether Dr. Taylor gave the oral dosing instructions to Mr. Robinson was not a "consequential fact."

¶29 The Robinsons suggest that they needed to introduce evidence of the conviction to rebut Dr. Taylor's testimony that he

gave oral dosing instructions to Mr. Robinson that differed from those reflected in the written prescription. But it is apparent from the record that Dr. Taylor's character for truthfulness was, at best, only a tangential issue. Indeed, the Robinsons argued that Dr. Taylor was negligent regardless of which dosing instructions were given. For example, during opening arguments, the Robinsons noted that "no matter how you slice it, the evidence is going to show [that Mr. Robinson] took th[e] methadone as prescribed or less than prescribed and still suffered [a] fatal consequence." And the Robinsons' own expert opined that Mr. Robinson likely followed Dr. Taylor's oral instructions. In short, whether Dr. Taylor was telling the truth about the oral dosing instructions was inconsequential to the case and, therefore, there was no real need to impeach Dr. Taylor's credibility.

¶30 Because the jury's determination of negligence did not turn on the instructions, evidence of Dr. Taylor's conviction was only minimally probative. We now consider whether that conviction evidence was sufficiently prejudicial to substantially outweigh its probative value.

2. Admission of Dr. Taylor's Criminal Conviction Was Unfairly Prejudicial

¶31 Dr. Taylor argues that the admission of his conviction was unfairly prejudicial because it tempted the jury to find him negligent simply "because [he] had been convicted of criminal conduct." The Robinsons argue that we should defer to the trial court's determination of prejudice and that admission of Dr. Taylor's conviction was not sought for its prejudicial effect.

¶32 Conviction evidence is unfairly prejudicial when it is "inflammatory in the sense that the jury may use the conviction against the defendant for purposes other than determining the defendant's credibility, and therefore would tend to induce the jury to render a verdict outside the relevant substantive evidence." *State v. Slowe*, 728 P.2d 110, 112–13 (Utah 1985). We therefore focus not on general prejudice, but only on "unfair" prejudice. *See Robinson v. All-Star Delivery, Inc.*, 1999 UT 109, ¶ 28, 992 P.2d 969 ("If Rule 403 simply prohibited prejudicial evidence, hardly any evidence would be admissible."). Accordingly, "[t]he critical question in a rule 403 analysis for unfair prejudice is whether [the evidence] is so prejudicial that the jury will be unable to fairly weigh the evidence."

*State v. Jones*, 2015 UT 19, ¶ 30, 345 P.3d 1195 (internal quotation marks omitted).

¶33 Although many types of evidence pose a risk of unfair prejudice, conviction evidence, in particular, carries with it unique and inherent danger of unfair prejudice. In *Old Chief v. United States*, 519 U.S. 172, 180 (1997), the Supreme Court identified various "improper grounds" on which a jury could base its decision when presented with conviction evidence. For instance, the jury might generalize a defendant's earlier conviction into "raising the odds that he did the later bad act now" at issue. *Id.* The jury might also base its decision on the improper grounds that a convict deserves punishment, even if it is uncertain of the convict's liability or guilt in the instant case. *Id.* at 181.

¶34 In this case, details about Dr. Taylor's conviction had the potential to lure the jury into declaring fault on a ground different from the Robinsons' allegation of negligence. The Robinsons provided a detailed narrative of Dr. Taylor selling oxycodone in a parking lot. The narrative is loaded with extraneous meaning that provokes imagery of a shady doctor abusing his authority to profit as a part-time drug dealer. Because this depiction is so contrary to our view of the principled and professional physician who thoroughly diagnoses his patients in a traditional office space, it immediately elicits an emotional response. The imagery it invokes entices a jury to reason that Dr. Taylor is a bad doctor because he is a bad person.

¶35 Both Dr. Taylor's prior conviction and the negligence claims at issue here involve questionable prescriptions. The close similarity between the parking lot prescriptions and the prescription at issue in this case increase the risk of unfair prejudice. The jury could have improperly inferred from the conviction that Dr. Taylor was willing to prescribe dangerous medications without exercising proper diligence. And this improper inference speaks directly to the question of Dr. Taylor's lack of due care, which the jury had to specifically determine in finding negligence.

¶36 Finally, even had the jury believed that Dr. Taylor had altruistic motives in helping a stranger in pain, it still could readily draw the improper inference that the details of the conviction demonstrated Dr. Taylor's weakness of not being able to say "no" to demanding patients. Thus, it would be easy to picture Dr. Taylor

succumbing to a drug-dependent Mr. Robinson insisting on a dangerously high dose of methadone.

¶37 In short, the inferences to be drawn from the evidence of Dr. Taylor's prior conviction may have led the jury to conclude that Dr. Taylor should be punished, regardless of his liability in this particular case. This risk "creat[ed] a prejudicial effect that outweighs ordinary relevance." *Id.* (internal quotation marks omitted).

¶38 In summary, admission of Dr. Taylor's conviction substantially increased the likelihood of the jury finding negligence on an improper ground, therefore posing a significant danger of unfair prejudice. Given that the Robinsons had no real need for the conviction evidence, we hold that the probative value of Dr. Taylor's criminal conviction was substantially outweighed by the risk of unfair prejudice and that the trial court therefore abused its discretion in admitting the evidence under rule 609(a)(1)(A).

## II. ADMISSION OF DR. TAYLOR'S CONVICTION WAS NOT HARMLESS ERROR

¶39 Having concluded that the trial court abused its discretion in admitting the conviction evidence, we now turn to the question of whether that error was harmless. "The test for harmless error in cases involving an erroneous failure to exclude prior convictions is whether, absent the error, there was a reasonable likelihood of a more favorable result for [the party]." *State v. Lanier*, 778 P.2d 9, 11 (Utah 1989). Therefore, "trial court errors will require reversal only if [our] confidence in the jury's verdict is undermined." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 24, 289 P.3d 369 (alteration in original) (internal quotation marks omitted).

¶40 In this case, our confidence in the jury's verdict is sufficiently undermined to warrant a new trial. As discussed above, admission of the criminal conviction unfairly prejudiced Dr. Taylor. And that prejudice created a reasonable likelihood that the jury generalized Dr. Taylor's criminal act, concluding that he was a bad person who needed to be punished. Moreover, the jury may have concluded that even if Dr. Taylor was not at fault in this case, they could ensure he never again wrote an illegal prescription. Indeed, the Robinsons capitalized on this line of thought. In their closing argument, they highlighted that "Dr. Taylor is a convicted felon, convicted of unlawfully selling prescriptions for oxycodone in parking lots." Explaining to the jury that Dr. Taylor was a

"convicted felon" is one thing under rule 609(a)(1), but coloring that fact with the how, what, and where of the conviction, including mentioning that he "sold" the prescriptions, may have allowed the colorful details of a conviction narrative to pervade the minds of jurors.

¶41 The prejudicial impact of the evidence undermines our confidence in the verdict. The specific details of Mr. Robinson's death and drug consumption behavior are largely unknown, and without the admission of Dr. Taylor's prior criminal conviction, there is a reasonable likelihood of a more favorable result for Dr. Taylor. Because the impermissible details of the conviction could have reasonably impacted the jury's assessment of negligence, we vacate the jury's verdict and remand for a new trial.

## CONCLUSION

¶42 The trial court abused its discretion in admitting evidence of Dr. Taylor's prior conviction under rules 608 and 609 of the Utah Rules of Evidence. Rule 608 does not govern admission of evidence of a criminal conviction, and rule 609(a)(2) does not require the automatic admission of a conviction of narcotics distribution. We also hold that the probative value of Dr. Taylor's criminal conviction was substantially outweighed by the risk of unfair prejudice. These abuses of discretion sufficiently undermine our confidence in the jury's decision. Therefore, we vacate the jury verdict and remand the case for a new trial.

––––––––––––––

ASSOCIATE CHIEF JUSTICE LEE, dissenting:

¶43 Plaintiffs' medical malpractice claim alleged negligence by Dr. Paul Taylor in his prescription of an unreasonable dose of methadone leading to the death of Brad Robinson. In support of this claim, plaintiffs presented expert testimony challenging the reasonableness of the dosage on Taylor's written prescription.

¶44 Taylor offered two responses. First, Taylor proffered his own testimony (through a deposition transcript) that he had given special dosing instructions to Robinson—instructions that directed Robinson to take less than the prescribed amount initially, and to go up to the prescribed dosage only if the lower dosage was insufficient. At trial, Taylor asserted that this ameliorated any alleged negligence in the written prescription, in that the oral instructions were reasonable and that Robinson was at fault for

15

failing to follow the oral instructions. Second, Taylor presented expert testimony (from Dr. Long) supporting the reasonableness of the methadone dosage on the written prescription. Dr. Long's testimony indicated that although the methadone dosage was unusual, it was necessary (and reasonable) for this patient given his high level of tolerance for pain medication.

¶45 Plaintiffs, in turn, challenged Taylor's assertions regarding the oral dosing instructions. They first alleged that no such instructions were given—noting that Taylor's testimony was the only evidence of such instructions, and questioning his credibility in light of his prior felony conviction (among other things). As a fallback, plaintiffs also asserted that even the alleged oral dosing instructions were unreasonable.

¶46 The jury entered a verdict in favor of the plaintiffs. It found that Taylor had breached the standard of care and that his breach was the cause of Robinson's death. And it awarded the Robinsons $3 million in general damages. The verdict gave no indication of the specific basis of the jury's determination of negligence, however. Thus, there is no way to determine whether the jury accepted or rejected Taylor's assertion that he gave oral dosing instructions, or whether it reached the question of whether the oral dosing instructions were unreasonable.

¶47 The majority reverses and remands for a new trial. It does so on the basis of its determination of error in the admission of evidence of a prior criminal conviction of Taylor, which was admitted for the purpose of allowing the plaintiffs to challenge his credibility. *See supra* ¶ 28. I agree with the court's analysis under rules 608(b) and 609(a)(2). The prior conviction was not properly admissible under either of these rules, for reasons articulated by the court.

¶48 I respectfully dissent, however, because I disagree with the court's analysis and holding under rule 609(a)(1)(A). I would affirm the district court's admission of Taylor's prior conviction under the abuse of discretion standard under this rule.

¶49 The majority deems Taylor's conviction for distribution of a controlled substance "minimally probative." *Supra* ¶ 30. It bases that conclusion on the determination that Taylor's testimony about oral dosing instructions was somehow "inconsequential to the case." *Supra* ¶ 29. And in light of the purportedly "tangential" nature of Taylor's testimony, the majority concludes that "there was no real

16

need to impeach Dr. Taylor's credibility," and thus no basis for assigning any significant probative value to Taylor's conviction. *Supra* ¶ 29.

¶50 In sum, the majority's reasoning is as follows: (1) Taylor's dosing instructions were inconsequential to the jury's finding of negligence; (2) the injection of Taylor's criminal conviction into the trial was thus minimally probative; and (3) because the danger of unfair prejudice substantially outweighed the minimal probative value of the criminal conviction information, it should not have been introduced to the jury.

¶51 I find this analysis troubling—both legally and factually. As a legal matter, the probative value of a prior conviction turns on the impact of the conviction on the witness's credibility, not on the relative significance of the issue on which the witness is testifying.[1] The significance of the issue should matter, if at all, in the assessment of the unfairness of any prejudice, or of the harmlessness of any error. By adding this consideration to the probative value calculus, the majority loads one side of the scale before even getting to any balancing. This conflates minimal significance with minimal probative value.

¶52 I would start with a straightforward analysis of the impact of Taylor's prior conviction on his credibility as a witness. And I would find the probative value of the conviction in question to be substantial—or at least arguably so, which is all it should take under the abuse of discretion standard of review. The conviction, for starters, was on a felony. *See supra* ¶ 28 (acknowledging that "any felony conviction is 'at least somewhat probative of a witness's propensity to testify truthfully'" (quoting *United States v. Estrada*, 430

---

[1] *See, e.g., State v. Gomez*, 2002 UT 120, ¶ 34, 63 P.3d 72 ("The trial court must . . . evaluate and consider the probative value of the proffered testimony, that is, the extent to which the proposed testimony is probative of truthfulness or untruthfulness . . . ."); *State v. Emmett*, 839 P.2d 781, 785–86 (Utah 1992) ("it is well established that under Utah Rules of Evidence 404 and 609, past criminal convictions are only admissible for the limited purpose of attacking the credibility of a defendant . . . ."); *see also* BLACK'S LAW DICTIONARY 1397 (10th ed. 2014) (defining probative as "[t]ending to prove or disprove").

F.3d 606, 617 (2d Cir. 2005))). This felony, moreover, seems to me to call Taylor's credibility into question quite directly.[2] A conviction for distribution of a controlled substance may not so indicate on its face, as the elements of the offense do not generally require proof of a "dishonest act or false statement." *Supra* ¶ 26. But when a doctor pleads guilty to selling an oxycodone prescription in a parking lot, there is a strong inference that he was providing the prescription under false (or at least questionable) pretenses. At a minimum, the district court would not be abusing its discretion in so concluding, which is all that is needed here.[3]

¶53 That suggests that Taylor's conviction was substantially probative of his lack of credibility. I would so conclude. I would also hold, under the abuse of discretion standard of review, that the probative value of the prior conviction was not "substantially outweighed by a danger of . . . unfair prejudice." UTAH R. EVID. 403.

¶54 I agree, certainly, that the "narrative of Dr. Taylor selling oxycodone in a parking lot" likely evoked a powerful negative view of the doctor. *Supra* ¶ 34. And the majority is right that opening the door to this prior conviction introduced a possibility that the jury could make improper—and unfairly prejudicial—inferences (*e.g.,* "that Dr. Taylor is a bad doctor because he is a bad person"). *Id.* But we cannot *assume* that this unfair prejudice would predominate over the proper function of the evidence (of undermining Taylor's credibility). After all, the jury was instructed to consider the prior

---

[2] "Rule 609(a)(1) crimes, which do not bear directly on honesty such as to be automatically admissible under Rule 609(a)(2), may nonetheless be highly probative of credibility." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). "[M]any [Rule 609(a)(1) felonies] are significantly probative of a witness's propensity for truthfulness." *Id.*; *see also United States v. Burston*, 159 F.3d 1328, 1335 (11th Cir. 1998) ("The implicit assumption of Rule 609 is that prior felony convictions have probative value.").

[3] *See also Burston*, 159 F.3d at 1335 ("We are not certain what evidence of two convictions for theft by taking, one conviction for armed robbery, and one conviction for aggravated assault says about [the witness'] credibility, but we are certain that the jury should have been given the opportunity to make that decision.").

conviction *only* in judging Taylor's credibility.[4] And if the mere existence of other, unfair inferences were enough to outweigh the probative value of a prior conviction, no such evidence would ever be admitted. That cannot be what our rules envision.[5]

¶55 If the majority were right that the question of Taylor's credibility in allegedly giving oral dosing instructions was an inconsequential matter at trial, *see supra* ¶ 29, then the risk of unfair prejudice could possibly be seen as substantially outweighing the probative value of the prior conviction evidence. But the court's assessment of the significance of Taylor's credibility cannot be reconciled with the trial record.

¶56 As noted, Taylor's alleged oral dosing instructions were a central part of his defense. And the trial transcript contradicts the majority's characterization of Taylor's credibility as "tangential." *Supra* ¶ 29. It's true that "the Robinsons argued that Taylor was negligent regardless of which dosing instructions were given," and that their expert "opined that Mr. Robinson likely followed" any oral dosing instructions. *Supra* ¶ 29. But the court's characterization of the trial record is incomplete. Throughout the trial, plaintiffs challenged the very existence of any oral dosing instructions. And they openly invited the jury to reject Taylor's testimony of such instructions by challenging his credibility.

¶57 This was particularly clear during closing argument. Plaintiffs' counsel's argument was focused on questioning the

---

[4] "We should presume that the jury followed these instructions. Our case law, in fact, prescribes [such] a presumption . . . ." *Wilson v. IHC Hosps., Inc*, 2012 UT 43 ¶ 142, 289 P.3d 369 (Lee, J., dissenting) (relying on *State v. Harmon*, 956 P.2d 262, 273 (Utah 1998)).

[5] The majority is concerned that "[a]lthough many types of evidence pose a risk of unfair prejudice, conviction evidence, in particular, carries with it unique and inherent danger of unfair prejudice." *Supra* ¶ 34. But Rule 403 contains no such presumption of increased risk of unfair prejudice for conviction evidence. It simply allows conviction evidence to be admitted unless its value in aiding the jury's evaluation of witness credibility is *substantially* outweighed by the risk of *unfair* prejudice. Those two adjectives are significant. If any presumption is present in our rule, it is a presumption in favor of admitting conviction evidence.

existence of oral dosing instructions and on questioning the credibility of Taylor's testimony:

> Now, if during deliberations somebody says, "Well, but there are special dosing instructions," remind them of these things: There is no evidence of special dosing instructions.
>
> Okay.
>
> If there were special dosing instructions, they are inconsistent with every other piece of evidence we have. Inconsistent with the written—handwritten note by Dr. Taylor on May 26. It's inconsistent with the typed out note for the 26th. It's inconsistent with the prescription itself, and it's in prescription (sic) with the verification, the confirmation of the dose, provided by Dr. Taylor's office to Mr. Carlson. It's not consistent with anything
>
> . . . .
>
> The only evidence is Dr. Taylor's own word[;] . . . . as the judge instructed, you've got to consider the credibility of each witness. Dr. Taylor is a convicted felon, convicted of unlawfully selling prescriptions for oxycodone in parking lots. He is not credible. He is the only witness who's claimed these instructions, instructions that aren't consistent with any piece of written evidence we have.

¶58 The question of special dosing instructions was a key question at trial. Taylor voluntarily injected this issue into the case. He did so as a backup for his threshold assertion (via his expert, Dr. Long) that the written prescription was reasonable. And the plaintiffs, predictably and as was their right, seized upon the opportunity to challenge Taylor's credibility. In so doing, they openly invited the jury to reject Taylor's assertion that he gave oral dosing instructions on the basis of doubts about his credibility. For all we know the jury did exactly that. On this record it is a fair inference that Taylor's credibility was a key question for the jury.

¶59 In these circumstances, I have no idea how the majority can say that Taylor's credibility was tangential, or that the "jury's determination of negligence did not turn on" the question whether Taylor gave oral dosing instructions. *Supra* ¶ 30. That is sheer

speculation. The most we can say is that the jury *might not* have found it necessary to decide whether Taylor "was telling the truth about the oral dosing instructions," *supra* ¶ 29, given that the plaintiffs alleged negligence even under those instructions. That was a fallback for the plaintiffs, however, as they directly challenged the existence of oral dosing instructions and directly challenged Taylor's credibility in asserting that he gave them. And for me that suggests that Taylor's credibility was a key issue—one voluntarily injected into the case by Taylor, and challenged directly by the plaintiffs.

¶60 Because Taylor's credibility was a key issue, I see no way to presume that the jury misused probative evidence of credibility to draw unfair inferences against him. I would accordingly affirm. That result seems particularly appropriate under the abuse of discretion standard of review. Under this standard the district court's decision may be upheld even if we decide that we might have excluded Taylor's prior conviction if we had been presiding over the trial. It should be enough that a reasonable trial judge could find that the probative value of the conviction is not substantially outweighed by the risk of unfair prejudice.[6] I would affirm on that basis.

––––––––––––

[6] *See, e.g., Barrientos ex rel. Nelson v. Jones*, 2012 UT 33, ¶ 39, 282 P.3d 50 ("[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion, and then only if the ruling was beyond the limits of reasonability."(alteration in original) (internal quotation marks omitted)).