Justice PARRISH,
opinion of the Court:
INTRODUCTION
1 Robby and Lisa Robinson brought this medical malpractice lawsuit against Dr. Paul Taylor for the wrongful death of their deceased father, Brad Robinson. After the jury found that Dr. Taylor negligently caused Mr. Robinson's death, Dr. Taylor appealed, challenging the trial court's decision to admit into evidence Dr. Taylor's felony drug convietion.[1] We agree with Dr. Taylor and hold *1233 that evidence of Dr. Taylor's prior eriminal conviction was inadmissible under rules 608 and 609 of the Utah Rules of Evidence. Accordingly, we reverse and remand for a new jury trial.
BACKGROUND
T2 Dr. Taylor began treating Mr. Robinson in 2008 for chronic back pain and degenerative dise disease. Over the next three years, Dr. Taylor prescribed various pain medications to treat Mr. Robinson's pain, including methadone, Lortab, and Demerol. Mr. Robinson developed a drug tolerance that required successively larger doses of medication to ameliorate his pain.
8 During Mr. Robinson's last visit to Dr. Taylor on May 26, 2006, Dr. Taylor issued a written preseription to Mr. Robinson for a daily dosage of 140 milligrams of methadone. Two weeks later, Mr. Robinson was found dead at his home. The medical examiner determined that the cause of death was "acute methadone toxicity." The exact date of Mr. Robinson's death could not be determined, but evidence and medical testimony suggest he died on June 1 or 2, roughly a week after his last visit to Dr. Taylor. The Robinsons brought this suit against Dr. Taylor for wrongful death caused by medical malpractice.
14 During his deposition, Dr. Taylor testified that he had given Mr. Robinson oral dosing instructions for the methadone that differed from those reflected in the written prescription. Dr. Taylor argued that Mr. Robinson was at fault for his death because he failed to follow these oral instructions.
15 After Mr. Robinson's death, but prior to trial, Dr. Taylor was charged under federal law for illegally distributing a controlled substance. This charge was unrelated to Mr. Robinson's death. It arose when an individual requested a prescription for pain medication to help with a sport-related injury. Dr. Taylor met the individual in a parking lot on more than one occasion to give him pre-seriptions in exchange for cash, Dr. Taylor was charged with two federal felony drug counts for these acts. He subsequently pled guilty to one felony drug charge and was sentenced to prison. Due to his prison sentence, Dr. Taylor was unable to attend trial, and in lieu of direct examination, a previously recorded deposition was read to the jury.
T6 During trial, the Robinsons sought to introduce evidence of Dr. Taylor's felony conviction in order to impeach his deposition testimony as to his alleged oral dosing instructions. Dr. Taylor filed a motion in li-mine to exclude evidence of the conviction. The trial court denied the motion, and Dr. Taylor's deposition describing the events surrounding his felony conviction was read into the record.
[7 The jury found that Dr. Taylor breached the standard of care and that this breach was the proximate cause of Mr. Robinson's death. The jury awarded the Robinsons over $3 million in general damages and $300,000 in punitive damages. Dr. Taylor appealed. We have jurisdiction pursuant to Utah Code section 78A-8-102(8)(J).
STANDARD OF REVIEW
18 "[Wle grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." Daines v. Vincent, 2008 UT 51, ¶ 21, 190 P.3d 1269. Our review of the trial court's exercise of its discretion includes ensuring "that no mistakes of law affected a lower court's use of its discretion." State v. Barrett, 2005 UT 88, ¶ 17, 127 P.3d 682.
ANALYSIS
I. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING EVI DENCE OF DR. TAYLORS FELONY CONVICTION
19 Dr. Taylor argues that the trial court abused its discretion when it admitted his felony conviction for impeachment purposes. *1234 Dr. Taylor contends that his conviction was not admissible because his credibility was not at issue and because the prejudicial effect of the admission substantially outweighed its probative value. We agree and hold that the trial court erred when it admitted Dr. Taylor's criminal conviction.
110 "When interpreting an eviden-tiary rule, we apply principles of statutory construction.... Thus, we first look to the plain language of the rule." State v. Mead, 2001 UT 58, ¶ 44, 27 P.3d 1115 (alteration in original) (internal quotation marks omitted). We may also rely on interpretations of similar federal rules by federal courts to assist our own interpretation. See id. 145. In this case, the trial court admitted evidence of Dr. Taylor's felony conviction under rules 608(b), 609(a)(1), and 609(a)(2) of the Utah Rules of Evidence. We address each in turn.
A. Rule 608(b)
{11 Rule 608(b) governs evidence relating to a witness' character for truthfulness. The trial court admitted evidence of Dr. Robinson's felony conviction, reasoning that "writing a prescription under the false pretense of a doctor-patient relationship is probative of his character for truthfulness." But Dr. Taylor contends that rule 608 does not apply because it only governs admission of impeachment evidence for those acts that have not resulted in the conviction of a crime. We agree and hold that rule 608(b) permits impeachment only by specific acts that did not result in a criminal conviction, while rule 609 governs evidence relating to impeachment by a criminal conviction.
112 Whether conduct resulting in a criminal conviction may be admitted under rule 608(b) is an issue of first impression for this court. We recognize that the rules are not free from ambiguity on this matter, but the structure of our rules of evidence drives our conclusion. We begin with a discussion of the general prohibition against the admission of specific instances of conduct to prove character" [2]
[that] character or trait." .- 118 As a general matter, the Utah Rules of Evidence prohibit the admission of "[elvi-dence of a person's character or character trait" in order "to prove that on a particular occasion the person acted in conformity with Uran R. Evin. 404(a)(1). This prohibition includes evidence of specific instances of conduct. See 1d. 405(b) (articulating when specific instances of conduct may be used).
T 14 Rules 608 and 609 are both exceptions to rule 404 and apply when specific instances of a witness' conduct may bear on the witness' character for truthfulness.
15 Rule 608(b) provides,
Except for a criminal conviction . under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of ... the witness.
Accordingly, rule 608 allows specific instane-es of conduct to be inquired into on cross-examination if they are probative of a witness' character for truthfulness.
116 Rule 608 works in coordination with rule 609, which applies when "attacking a witness's character for truthfulness by evidence of a criminal conviction." Id. 609(2). Under both rules, specific instances of conduct are admissible for the purposes of attacking credibility. Conduct not resulting in a conviction may be inquired into on cross-examination under- rule 608, while rule 609 allows evidence of conduct that has resulted in a conviction, These rules are mutually exclusive: When specific instances of conduct are the subject of a conviction, they are governed exclusively by rule 609. And if the specific acts do not involve a conviction, they are governed by rule 608. CJ, 28 Cmarurs Aran Wricet & Victor J. GoLp, FEDERAL PracticE Anp ProcEDpurE § 6133 (2d ed.2012) *1235 ("[Clriminal acts that have not been made the subject of a prosecution and conviction are controlled by Rule 608(b), not Rule 609").
T17 The opening phrase of rule 608(b) makes this explicit. The rule begins with the phrase "[elxeept for a criminal conviction under Rule 609." This language specifically excludes rule 608's application to specific instances of conduct that result in a criminal convictions.[3] See Waricut & Gon, supra, § 6117 ("[The first sentence of subdivision (b) specifically states that the admission of [conviction] evidence is determined under Rule 609, not Rule 808."). This construction of rule 608(b)'s introductory phrase is supported by the committee note to the federal rule, which provides, "Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on cross-examination." FrEp.REvin. 608% advisory committee's note (emphasis added).
[18 Rule 609 is the only rule that governs the admission of evidence of a criminal conviction. It applies when "attacking a witness's character for truthfulness by evidence of a criminal conviction." UTtax R. Evin. 609(a). And rule 609 gives, comprehensive treatment as to the admissibility of evidence of conviction. For instance, it distinguishes the admission of a eriminal conviction for a criminal defendant from other witnesses, id. 609(a)(1)(B), and it differentiates felonies and misdemeanors, id. 609(a)(1). Rule 609 also governs other evidentiary issues arising with prior convictions, such as the effects of a pardon, annulment, certificate of rehabilitation, juvenile adjudication, and the pendency of an appeal. Id. 609(c)-(e). Rule 608 is devoid of any gmdance on these important issues.
119 A majority of the federal appellate courts that have discussed the interplay between federal rules 608 and 609 have interpreted them to distinguish between those specific instances of conduct that lead to a conviction and those that do not. For example, in United States v. Osazuwa, 564 F.3d 1169, 1173 (9th Cir.2009), the court held that "[elvidence relating to a conviction ... is treated solely under Rule 609" and that "Rule 608 applies only to specific instances of conduct that were mot the basis of a criminal conviction." Id. at 1178. The court further recognized that admitting evidence under rule 608 as "a bad act resulting in a convietion would be, in a sense, count[ing] [the conviction] twiee-once by presenting the bad act itself and once by presenting the conviction that flowed from it." Id. at 1174. The court also observed, "The risk of unfsir prejudice or undue emphasis is the reason why Rule 609 and its related case law carefully guide the admission of prior convictions and their underlying facts." Id. at 1174-75.[4]
1 20 Secondary sources further support the same conclusion,. For instance, Professors Wright and Gold state, "Rule 608 does not regulate the admissibility of criminal convietion evidence, which is the subject of Rule 609." & Gounp, supro, § 6111 n.l. They also recognize that "[slubdivision (b) specifically exempts from its coverage evi-denes of specific instances of witness conduct in the form of criminal convictions." Id. § 6118; see also R. Counm Manarum & DBB *1236 Benson, Manarum & Benson On Uras Evr-pENCE 479 (2014) (arguing that treating evidence of specific acts relating to a criminal conviction exclusively under rule 609 "is arguably [a] better rule and reconciles the differences [between rules 608 and 6091").
121 We agree and accordingly hold that rule 608(b) permits impeachment only by specific acts that did not result in a erimi-nal conviction. Therefore, the admission of Dr. Taylor's conviction under rule 608 was an abuse of discretion.
B. Rule 609(a)(2)
€22 We now move to consider the other rule under which the district court admitted evidence of Dr. Taylor's conviction, rule 609. Rule 609(a) has two subsections governing admission of evidence of a criminal conviction: subsection 609(a)(1) grants courts discretion to admit some crimes and subsection 609(a)(2) requires automatic admission for certain other crimes, We begin with Dr. Taylor's challenge to the automatic admission of his eriminal conviction under rule 609(a)(2). Dr. Taylor contends that its admission was an abuse of discretion because the rule only allows automatic admission of evidence when the criminal elements require proving a dishonest act or a false statement and unlawful distribution of a controlled substance involves neither. We agree. Only when the elements of the crime require proving a dishonest act or false statement can' a prior conviction be automatically admitted into evidence.
123 The trial court held that Dr. Taylor's criminal conviction must be automatically admitted into evidence because "writing a pre-seription under the false pretense of the existence of a doctor-patient relationship pertains to a crime involving a dishonest act or false statement." But this is a misapplication of the rule. Although a previous version of rule 609 required the admission of a prior criminal conviction when the erime "involved dishonesty or false statement," UTtak R. Evin. 609(a)(2) (2010), our current rule has stricter requirements for mandatory admission of eriminal convictions.
24 The current version of rule 609(a)(2) of the Utah Rules of Evidence provides that
for any erime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving-or the witness's admitting-a dishonest act or false statement.
Accordingly, rule 609(a)(2) applies to a narrow subset of criminal convictions.
{25 Under rule 609(a)(2), only those crimes involving a statutory offense that require proving a dishonest act or false statement as an element of the crime are to be automatically admitted into evidence. The phrase "dishonest act or false statement" applies to crimes "in the nature of crimen falsi[,] the commission of which involves some element of untruthfulness, deceit, or falsification bearing on the accused's propensity to testify truthfully." [5] FEp.R. Evin. 609 advisory committee's note (quoted approvingly in State v. Bruce, 779 P.2d 646, 654 (Utah 1989)). Thus, it is the elements of the erimi-nal act that determine its admissibility, not the manner in which the offense is committed. See United States v. Lewis, 626 F.2d 940, 946 (D.C.Cir.1980).
[ 26 While it is possible that distributing a controlled substance may be done in a deceitful manner, the offense for which Dr. Taylor was convicted, 21 U.S.C. § 841(a), does not include elements of a dishonest act or false statement as part of the statutory offense.[6] *1237 See Lewis, 626 F.2d at 946 (holding that 21 U.S.C. § 841(a) does not "involve 'dishonesty or false statement' within the meaning .of Rule 609(a)(2)"). Accordingly, admission of Dr. Taylor's prior conviction of a narcotics violation was improper under rule 609(a)(@).
C. Rule 609(a)(1)(A)
127 The trial court also admitted evi-denee of Dr. Taylor's eriminal conviction under rule 609(a)(1)(A). This rule allows a party to "attackf[ ] a witness's character for truthfulness by evidence of a criminal convietion." Utax R. Evin. 609(a)(1). But in a civil case, a felony conviction "must be admitted[ ] subject to Rule 408." Id. 609(a)(1)(A). Rule 408, provides that "[the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . unfair prejudice."[7] Dr. Taylor argues that admission of his conviction under this rule was also an abuse of discretion because Dr. Taylor's credibility was not at issue. He therefore reasons that the evidence was not probative and substantially prejudiced the jury. The Robinsons respond that Dr. Taylor put his credibility at issue by claiming to have given Mr. Robinson undocumented oral dosing instructions. Since both Mr. Robinson, who is deceased, and Dr. Taylor, who was imprisoned, were unavailable for trial, they reason that the only avenue left for them to attack Dr. Taylor's testimony regarding the dosing instructions was to impeach his credibility. We agree with Dr. Taylor and hold that the district court abused its discretion by admitting Dr. Taylor's prior eriminal conviction under rule 609(a)(1)(A) of the Utah Rules of Evidence because the danger of unfair prejudice substantially outweighs any probative value it may have.
1. Dr. Taylor's -Criminal Conviction Had Minimal Probative Value
928 "The probative value of evidence is judged by the strength .of the evi-dencef,] its ability to make the existence of a consequential fact either more or less probable[,] and the proponent's need for the evidence." State v. Johnson, 784 P.2d 1185, 1140 (Utah 1989) (footnote omitted) (internal quotation marks omitted). Dr. Taylor contends that his felony conviction had little probative value because it was not a crime of dishonesty admissible under rule 609(2)(2). Although this may be true, the probative value of a erime is not determined solely on whether the crime should have been admitted under rule 609(a)(2). See United States v. Lipscomb, 702 F.2d 1049, 1057 (D.C.Cir.1988) (en banc) ("[Clrimes of stealth (eg., smuggling, burglary), while not quite crimes of 'dishonesty or false statement, do reflect lack of credibility and should be admitted unless significantly prejudicial."). Indeed, the existence of rule 609(a)(1) indicates that any felony conviction is "at least somewhat probative of a witness's propensity to testify truthfully." United States v. Estrada, 430 F.3d 606, 617 (2d Cir.2005); accord Lipscomb, 702 F.2d at 1062. Even though Dr. Taylor's criminal conviction did not involve a crime of dishonesty, his willingness to violate the law does cast some doubt on his character for truthfulness. Although we acknowledge the general probative value of a prior criminal conviction, we conclude that its admission in this case was an abuse of discretion because whether Dr. Taylor gave the oral dosing instructions to Mr. Robinson was not a "consequential fact."
129 The Robinsons suggest that they needed to introduce evidence of the convietion to rebut Dr. Taylor's testimony that he gave oral dosing instructions to Mr. Robinson that differed from those reflected in the *1238 written prescription. But it is apparent from the record that Dr. Taylor's character for truthfulness was, at best, only a tangential issue. Indeed, the Robinsons argued that Dr. Taylor was negligent regardless of which dosing instructions were given.> For example, during opening arguments, the Robin-sons noted that "no matter how you slice it, the evidence is going to show [that Mr. Robinson] took thle] methadone as prescribed or less than prescribed and still suffered [a] fatal consequence." And the Robinsons' own expert opined that Mr., Robinson likely followed Dr. Taylor's oral instructions. In short, whether Dr. Taylor was telling the truth about the oral dosing instructions was inconsequential to the case and, therefore, there was no real need to impeach Dr. Taylor's credibility.
130 Because the jury's determination of negligence did not turn on the instructions, evidence of Dr. Taylor's conviction was only minimally probative. We now consider whether that conviction evidence was sufficiently prejudicial to substantially outweigh its probative value.
2. Admission of Dr,. Taylor's Criminal Con-viection Was Unfairly Prejudicial
131 Dr. Taylor argues that the admission of his conviction was unfairly prejudicial because it tempted the jury to find him negligent simply "because [he] had been convicted of eriminal conduct." The Robinsons argue that we should defer to the trial court's determination of prejudice and that admission of Dr. Taylor's conviction was not sought for its prejudicial effect.
132 Conviction evidence is unfairly prejudicial when it is "Inflammatory in the sense that the jury may use the conviction against the defendant for purposes other than determining the defendant's credibility, and therefore would tend to induce the jury to render a verdict outside the relevant substantive evidence." State v. Slowe, 728 P.2d 110, 112-13 (Utah 1985), We therefore focus not on general prejudice, but only on "unfair" prejudice. See Robinson v. All-Star Delivery, Inc., 1999 UT 109, ¶ 28, 992 P.2d 969 ("If Rule 408 simply prohibited prejudicial evidence, hardly any evidence would be admissible."); Accordingly, "[the critical question in a rule 408 analysis for unfair prejudice is whether [the evidence] is so prejudicial that the jury will be unable to fairly weigh the evidence." State v. Jones, 2015 UT 19, ¶ 30, 345 P.3d 1195 (internal quotation marks omitted).
33 Although many types of evidence pose a risk of unfair prejudice, conviction evidence, in particular, carries with it unique and inherent danger of unfair prejudice. In Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 126 LEd.2d 574 (1997), the Supreme Court identified various "improper grounds" on which a jury could base its decision when presented with conviction evidence. For instance, the jury might generalize a defendant's earlier conviction into "raising the odds that he did the later bad act now" at issue. , Id. The jury might also base its decision on the improper grounds that a convict deserves punishment, even if it is uncertain of the conviet's liability or guilt in the instant case. Id. at 181, 117 S.Ct. 644.
1 34 In this case, details about Dr. Taylor's conviction had the potential to lure the jury into declaring fault on a ground different from the Robinsons' allegation of negligence. The Robinsons provided a detailed narrative of Dr. Taylor selling oxycodone in a parking lot. The narrative is loaded with extraneous meaning that provokes imagery of a shady doctor abusing his authority to profit as a part-time drug dealer. Because this depiction is so contrary to our view of the principled and professional physician who thoroughly diagnoses his patients in a traditional office space, it immediately elicits an emotional response. The imagery it invokes entices a jury to reason that Dr. Taylor is a bad doctor because he is a bad person.
1 35 Both Dr. Taylor's prior conviction and the negligence claims at issue here involve questionable prescriptions. The close similarity between the parking lot prescriptions and the prescription at issue in this case increase the risk of unfair prejudice. The jury could have improperly inferred from the conviction that Dr. Taylor was willing to prescribe dangerous medications without exercising proper diligence. And this improper inference speaks directly to the question of Dr. Taylor's lack of due care, which the jury had to specifically determine in finding negligence. >
*1239 186 Finally, even had the jury believed that Dr. Taylor had altruistic motives in helping a stranger in pain, it still could readily draw the improper inference that the details of the conviction demonstrated Dr. Taylor's weakness of not being able to say "no" to demanding patients. Thus, it would be easy to picture Dr. Taylor succumbing to a drug-dependent Mr. Robinson insisting on a dangerously high dose of methadone.
87 In short, the inferences to be drawn from the evidence of Dr. Taylor's prior conviction may have led the jury to conclude that Dr. Taylor should be punished, regardless of his lability in this particular case. This risk "creat[ed] a prejudicial effect that outweighs ordinary relevance." Id. (internal quotation marks omitted).
[ 388 In summary, admission of Dr. Taylor's conviction substantially increased the likelihood of the jury finding negligence on an improper ground, therefore posing a significant danger of unfair prejudice. Given that the Robinsons had no real need for the conviction evidence, we hold that the probative value of Dr. Taylor's criminal conviction was substantially outweighed by the risk of unfair prejudice and that the trial court therefore abused its discretion in admitting the evidence under rule 609(a)(1)(A).
II ADMISSION OF DR. TAYLORS CONVICTION WAS NOT , HARMLESS ERROR
139 Having concluded that the trial court abused its discretion in admitting the conviction evidence, we now turn to the question of whether that error was harmless. "The test for harmless error in cases involving an erroneous failure to exelude prior convictions is whether, absent the error, there was a reasonable likelihood of a more favorable result for [the party]." State v. Lanier, 778 P.2d 9, 11 (Utah 1989). Therefore, "trial court errors will require reversal only if [our] confidence in the jury's verdict is undermined." Wilson v. IHC Hosps., Inc., 2012 UT 48, ¶ 24, 289 P.3d 369 (alteration in original) (internal quotation marks omitted).
$40 In this case, our confidence in the jury's verdict is sufficiently undermined to warrant a new trial. As discussed above, admission of the criminal conviction unfairly prejudiced Dr. Taylor, And that prejudice created a reasonable likelihood that the jury generalized Dr. Taylor's criminal act, concluding that he was a bad person who needed to be punished. Moreover, the jury may have concluded that even if Dr, Taylor was not at fault in this case, they could ensure he never again wrote an illegal prescription. Indeed, the Robinsons capitalized on this line of thought. In their closing argument, they highlighted that "Dr. Taylor is a convicted: felon, convicted of unlawfully selling pre-seriptions for oxycodone in parking lots." Explaining to the jury that Dr. Taylor was a "convicted felon" is one thing under rule 609(a)(1), but coloring that fact with the how, what, and where of the conviction, including mentioning that he "sold" the prescriptions, may have allowed the colorful details of a conviction narrative to pervade the minds of jurors. |
1141 The prejudicial impact of the evidence undermines our confidence in the verdict. The specific details of Mr. Robinson's death and drug consumption behavior are largely unknown, and without the admission of Dr. Taylor's prior eriminal conviction, there is a reasonable likelihood of a more favorable result for Dr. Taylor, Because the impermissi-bie details of the conviction could have reasonably impacted the jury's assessment of negligence, we vacate the jury's verdict and remand for a new trial,
CONCLUSION
[42 The trial court abused its discretion in admitting evidence of Dr. Taylor's prior conviction under rules 608 and 609 of the Utah Rules of Evidence, Rule 608 does not govern admission of evidence of a eriminal conviction, and rule 609(a)(2) does not require the automatic admission of a conviction of narcotics distribution. "We also hold that the probative value of Dr. Taylor's criminal conviction was substantially outweighed by the risk of unfair prejudice, These abuses of discretion sufficiently undermine. our confidence in the jury's decision. Therefore, we vacate the jury verdict and remand the case for a new trial.

. Dr. Taylor also challenges the trial court's decision allowing the jury to consider punitive dam *1233 ages and its refusal to apply the health care malpractice damages cap to the jury award. See Urax Cope § 78B-3-410. However, after oral argument, the Robinsons filed a suggestion of mootness indicating that they are no longer seeking punitive damages. We therefore do not address that issue. Because we reverse and vacate the jury award, we need not address the issue of the damages cap. However, we note that our recent decision in Smith v. U.S., 2015 UT 68, 356 P.3d 1249 provides guidance on that issue to assist the trial court on remand.

. Both rules 608 and 609 are identical to the respective federal rules. When our rules of evidence are identical to the federal rules, we generally seek "to achieve uniformity between [our] rules and the federal rules"; accordingly, "this Court looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." State v. Gray, 717 P.2d 1313, 1317 (Utah 1986); see also State v. Rothlisberger, 2006 UT 49, ¶¶ 14-20, 147 P.3d 1176 (relying on federal advisory committee notes as an interpretive aid).

. The 2003 version of rule 608 stated this more directly: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other thar conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, ... be inquired into on cross examination of the witness. ..." Uran R. Evin, 608(b) (2003) (em-_ phasis added). The changes from this version to the current language were "intended to be stylistic only, There [was] no intent to change any result in any ruling on evidence admissibility." Urag R, Evin, 608 advisory committee note.

. Other federal appellate courts have likewise observed that rule 608(b) is limited to bad acts that do not result in a felony conviction. E.g., United States v. Lightfoot, 483 F.3d 876, 881 (8th Cir.2007) ("Rule 608(b) ... confers upon district courts discretion to permit witness-credibility questioning on specific bad acts not resulting in a felony conviction."); United States v. Whitmore, 359 F.3d 609, 620 (D.C.Cir.2004) ("[Rule] 608(b) allows a witness's credibility to be attacked based on misconduct that, while not constituting a criminal conviction, nevertheless tends to show that the witness is untruthful.'"); United States v. Parker, 133 F.3d 322, 327 (5th Cit.1998) ("Prior bad acts that have not resulted in a conviction are admissible under [Rule] 608(b) if relevant to the witness's character for truthfulness or un-truthfuilness."); United States v. Smith, 80 F.3d 1188, 1193 (7th Cir.1996) ("[Thhe plain language of [rule 608(b)] allows for cross-examination of matters 'other than conviction of crime.''"); Mason v. Texaco, Inc., 948 F.2d 1546, 1556 (10th Cir.1991). -

. We have already recognized that "federal courts and most state courts are unwilling to conclude that offenses such as ... narcotic violations are per se crimes of dishonesty or false statement." State v. Bruce, 779 P.2d 646, 655 (Utah 1989) (internal quotation marks omitted); see also Gregory v. State, 616 A.2d 1198, 1204 (Del.1992) (holding that the elements of the crime of possession with intent to deliver "require no proof of conduct involving lying, deceiving, cheating, stealing or defrauding"); State v. Zaehringer, 325 NW.2d 754, 756 (Iowa 1982) (distribution offenses do not involve "deceit, fraud, cheating, or stealing"); State v. Hardy, 133 Wash.2d 701, 946 P.2d 1175, 1178 (1997) ("Drug convictions are not crimes of 'dishonesty or false statement' like perjury or criminal fraud and thus [rule 609(a)(2) ] does not apply.").

. The elements of 21 U.S.C. § 841(a) are (1) "knowingly or intentionally" (2) "manufac-tur[ing], distribut{ing], or dispens[ing], or possessing] with intent to manufacture, distribute, or dispense," (3) "a controlled substance." See 21 U.S.C. § 841.

. The parties disagree over whether we should apply the rule 403 balancing factors articulated in State v. Banner, 717 P.2d 1325, 1334 (Utah 1986). In Banner we identified factors "to be considered when balancing probative value [of a prior conviction] against [its] prejudicial effect." Id. These factors were the nature of the crime, the recentness of the prior conviction, the similarity between the prior and charged crime, the importance of the credibility issue, and the need for the accused's testimony. Id. Banner was a criminal case; and, in any event, we have yet to apply these factors in any civil case. It suffices here to echo our recent explanation in State v. Lucero, "Itis ... unnecessary for courts to evaluate each and every [Banner] factor and balance them together in making their [rule 403] assessment. This is because courts are bound by the text of rule 403, not [a] limited list of considerations." 2014 UT 15, 132, 328 P.3d 841.