2018 UT App 90

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TERELL LYNN YORK,
Appellant.

Opinion
No. 20160569-CA
Filed May 17, 2018

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 151901944

Samuel P. Newton, Cherise M. Bacalski, and Emily
Adams, Attorneys for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

POHLMAN, Judge:

¶1    Terell Lynn York appeals her conviction of one count of obstruction of justice, a third degree felony. She contends that the trial court and the State committed errors related to the impeachment of the key defense witness. We affirm.

## BACKGROUND[1]

*Events at the Campsite*

¶2    York, her boyfriend (Boyfriend), and a female friend were camping in a small camper trailer at a campground in Weber County. On the day the group was due to check out, the campsite's manager inquired whether they would be staying or leaving. The group informed the manager that they intended to leave. However, that evening, the manager observed that they had not packed up their campsite or departed. The manager called the police.

¶3    Two officers from the Ogden police department responded. When they arrived, Boyfriend did not appear to be at the campsite. One of the officers, Officer Bryner, approached York and her female friend and asked them to leave. The women began to pack their belongings and load them into the camping trailer, leaning inside its doorway multiple times. The manager informed the officers that Boyfriend had been part of the group and that he believed Boyfriend was inside the trailer. When Officer Bryner walked back to his patrol car and ran York's information on his computer, he "found a link" between York and Boyfriend, and he showed the manager a photograph of Boyfriend to verify it was the same man the manager had observed. During the records search, he also discovered that Boyfriend had an outstanding felony arrest warrant. During this time, Officer Bryner had a clear view of the trailer's door and kept his eye on the scene.

¶4    Once he discovered the warrant and Boyfriend's connection to York, Officer Bryner returned to York and asked if

---

1. "On appeal from a criminal conviction, we recite the facts from the record in the light most favorable to the jury's verdict." *State v. Wilkinson*, 2017 UT App 204, ¶ 2 n.1, 407 P.3d 1045 (quotation simplified).

she knew Boyfriend's whereabouts. York responded that while Boyfriend had been "down by the river just a few minutes prior," she did not know where he was. Officer Bryner asked if Boyfriend was inside the trailer, and York said, "No, he's not." Officer Bryner then informed York of the active warrant for Boyfriend's arrest and asked her again whether Boyfriend was inside the trailer. Again, York responded that he was not. Finally, Officer Bryner asked York for permission to look inside the trailer, but York told him it was not her trailer and she could not give permission to search it.

¶5     Immediately after that exchange, Officer Bryner obtained from York's friend permission to search the trailer. When Officer Bryner and the other responding officer, Officer Taylor, looked into the trailer, they saw Boyfriend lying on the bed with his feet right at the door due to the small size of the trailer. Both officers described their view of Boyfriend as completely unobstructed and noted that they could see Boyfriend's entire body from the trailer's doorway.

¶6     Officer Bryner arrested Boyfriend. He also arrested York for obstruction because she "had lied and helped conceal [Boyfriend] during [the] investigation." Officer Taylor transported York to jail. During transport, York yelled at Officer Taylor that "she didn't give permission to [Boyfriend] to be in the trailer," that "she wasn't helping him hide in the trailer," and that she "didn't open the door for him. He was there the whole time."

*Boyfriend's Testimony at Trial*

¶7     The State charged York with obstruction of justice, and York's case proceeded to trial. Boyfriend was the sole witness for the defense. Boyfriend testified that, on the evening in question, he had been near the river and observed the police talking to York and her friend as he approached the campsite. He stated that he snuck into the trailer when the officer talking to York and York's friend walked back to the patrol vehicle and that he did this to hide from the police because of the warrant for his arrest.

Boyfriend claimed he could not see York when he snuck into the trailer, thereby suggesting that she did not see him at that time. He testified that he was in the trailer approximately three to five minutes before he was discovered.

¶8 During cross-examination, the State questioned Boyfriend about two previous convictions. First, the State questioned Boyfriend about a 2010 conviction of tampering with evidence. Boyfriend admitted he had been convicted of that crime. Defense counsel did not immediately object, but subsequently argued that the conviction was inadmissible under rule 609 of the Utah Rules of Evidence, contending that it was not a crime of dishonesty. Defense counsel also brought to the court's attention that the conviction had been reduced from a felony to a class A misdemeanor upon Boyfriend's graduation from drug court.

¶9 On the overall issue of whether the tampering with evidence conviction could be used to impeach Boyfriend, the court determined that, even as a class A misdemeanor, the conviction was admissible for that purpose. In particular, the court concluded that the conviction was a dishonest act under rule 609(a)(2). After it ruled, the court asked the parties how they intended to present the conviction to the jury. Defense counsel suggested that the parties could stipulate that the conviction was a class A misdemeanor, and the State agreed. Defense counsel also indicated that he preferred the State to notify the jury of the stipulation.

¶10 The State subsequently advised the jury that the parties had "stipulated to information" about Boyfriend's conviction for tampering with evidence and that, although he was convicted of a third degree felony, the conviction was reduced to a class A misdemeanor. Defense counsel objected that the State misstated the stipulation. The court recognized that the stipulation was that Boyfriend had been "convicted of a misdemeanor, ultimately," and determined that it would allow the evidence. In doing so, the court noted that the conviction was "only being allowed in as impeachment" of Boyfriend and that "it has no implication directly or indirectly on [York]."

¶11　Second, the State questioned Boyfriend about one other alleged conviction—giving false information to a police officer in 2006. During cross-examination, Boyfriend stated that he had been charged with that offense but denied that he had been convicted. When the State attempted to produce a "rap sheet," defense counsel objected, and the court sustained the objection. The next day, the State supplied the court with a document from the South Ogden Justice Court allegedly establishing that Boyfriend had been convicted of the crime. Defense counsel objected, asserting that it was not a judgment of conviction because it looked more like a minute entry, the judge had not signed the document as to the conviction, and the only court signature on the document was as to its later authentication. The court concluded, over defense counsel's objection, that the document represented a judgment of conviction.

¶12　Finally, the State questioned Boyfriend about his relationship with York. Boyfriend testified that York was his girlfriend and agreed that he "wouldn't want her to get in trouble."

¶13　The jury convicted York, and she appeals.

ISSUES AND STANDARDS OF REVIEW

¶14　York argues that the trial court erred in allowing the State to impeach a defense witness with what she characterizes as "two inadmissible convictions" and that the admission of those convictions prejudiced her case. "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269. "Our review of the trial court's exercise of its discretion includes ensuring that no mistakes of law affected a lower court's use of its discretion." *Robinson v. Taylor*, 2015 UT 69, ¶ 8, 356 P.3d 1230 (quotation simplified).

¶15　York also argues that the State improperly informed the jury that one of the convictions "was charged as a felony, when

it only was a misdemeanor conviction." We review claims of prosecutorial misconduct for an abuse of discretion. *State v. Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7.

ANALYSIS

I. Impeachment Evidence

¶16 York argues that the trial court erred in admitting evidence under rule 609(a)(2) of the Utah Rules of Evidence that Boyfriend previously had been convicted of two offenses. York asserts that Boyfriend's first conviction—tampering with evidence under Utah Code section 76-8-510.5—"is not an inherently dishonest act" as required for admissibility under rule 609(a)(2). And she asserts that the evidence provided by the State to prove Boyfriend's second conviction—false information to a police officer under Utah Code section 76-8-506—was insufficient to establish that Boyfriend had actually been convicted of that crime. We address each contention below.

A.    Tampering with Evidence

¶17 York argues that Boyfriend's tampering with evidence conviction "was not a crime of dishonesty" as required for admissibility by rule 609(a)(2) of the Utah Rules of Evidence. We disagree.

¶18 Rule 609(a)(2) provides that "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."[2] Utah R. Evid. 609(a)(2). "The focus of rule

---

2. Neither party contends that Boyfriend's tampering with evidence conviction resulted from a false statement. As a result, we confine our analysis to whether Boyfriend's conduct constituted a dishonest act.

609(a)(2) concerns impeachment based on the probability that a particular witness may not be telling the truth as evidenced by prior acts of dishonesty on the part of that witness." *Zappe v. Bullock*, 2014 UT App 250, ¶ 14, 338 P.3d 242 (quotation simplified); *see also United States v. Smith*, 551 F.2d 348, 363, 365 (D.C. Cir. 1976) (explaining that Federal Rule of Evidence 609(a)(2), which is identical to Utah's rule 609(a)(2), provides for the automatic admission of "crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth");[3] *State v. Bruce*, 779 P.2d 646, 655–56 (Utah 1989) (describing the types of crimes covered by rule 609(a)(2) as those having a "credibility-deteriorating quality").

¶19 Because of the rule's specific and limited purpose, our supreme court has stated that the phrase "dishonest act or false statement" in rule 609(a)(2) only "applies to a narrow subset of criminal convictions"—crimes "in the nature of *crimen falsi*" that have "some element of untruthfulness, deceit, or falsification." *Robinson v. Taylor*, 2015 UT 69, ¶¶ 24–25, 356 P.3d 1230 (quotation simplified); *see also* Fed. R. Evid. 609 advisory committee notes to 2006 amendments (explaining that "dishonesty and false statement" included offenses "in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully," and that "[h]istorically, offenses classified as *crimina falsi* have included only those crimes in which the ultimate criminal act was itself an act of deceit" (quotation simplified)). And, in *Robinson*, our

---

3. "Utah appellate courts have looked to federal cases in interpreting Rule 609 as the Utah and federal rules are identical." *State v. Tucker*, 800 P.2d 819, 822 (Utah Ct. App. 1990); *see also* Utah R. Evid. 609 advisory committee note (explaining that rule 609 "is the federal rule, verbatim"); *Robinson v. Taylor*, 2015 UT 69, ¶ 25, 356 P.3d 1230 (looking to federal law to interpret the phrase "dishonest act or false statement" in Utah's rule 609(a)(2)).

supreme court clarified that "it is the elements of the criminal act that determine [the conviction's] admissibility [under rule 609(a)(2)], not the manner in which the offense is committed." 2015 UT 69, ¶ 25. Thus, a crime must "include elements of a dishonest act or false statement as part of the statutory offense" for the prior conviction to be admissible under rule 609(a)(2). *See id.* ¶ 26; *see also* Utah R. Evid. 609(a)(2) (explaining that the evidence of the previous crime "must be admitted if the court can readily determine *that establishing the elements of the crime required proving*" a dishonest act (emphasis added)).

¶20　Here, Boyfriend was previously convicted of tampering with evidence under Utah Code section 76-8-510.5(2). That section provides,

> A person is guilty of tampering with evidence if, believing that an official proceeding or investigation is pending or about to be instituted, or with the intent to prevent an official proceeding or investigation or to prevent the production of any thing or item which reasonably would be anticipated to be evidence in the official proceeding or investigation, the person knowingly or intentionally: (a) alters, destroys, conceals, or removes any thing or item with the purpose of impairing the veracity or availability of the thing or item in the proceeding or investigation . . . .

Utah Code Ann. § 76-8-510.5(2) (LexisNexis 2017).

¶21　In our view, this crime requires the State to prove that the offender committed an act "of untruthfulness, deceit, or falsification"—in other words, a dishonest act. *See Robinson*, 2015 UT 69, ¶¶ 24–25 (quotation simplified). Acts of deception or falsification are affirmative actions intended to mislead others from the truth. *See Deception*, Black's Law Dictionary (10th ed. 2014) ("The act of deliberately causing someone to believe that something is true when the actor knows it to be false.");

*Falsify*, Black's Law Dictionary (10th ed. 2014) ("To make deceptive; to counterfeit, forge, or misrepresent; esp., to tamper with (a document, record, etc.) by interlineation, obliteration, or some other means[.]"); *Deceive*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/deceive (last visited May 14, 2018) ("[T]o cause to accept as true or valid what is false or invalid," or "to make someone believe something that is not true"); *Falsify*, Dictionary.com, http://www.dictionary.com/browse/falsification (last visited May 14, 2018) ("[T]o make false or incorrect, especially so as to deceive.").

¶22    To prove that a person has tampered with evidence, the State must demonstrate beyond a reasonable doubt that, with requisite belief or intent as to the investigation, the person knowingly or intentionally altered, destroyed, concealed, or removed an item germane to an investigation for the express purpose of misleading investigators as to the status—either veracity or availability—of that particular item. Utah Code Ann. § 76-8-510.5.[4]    A person committing this offense therefore

---

4. We note that Utah Code section 76-8-510.5 appears in Chapter 8 of the Utah Criminal Code, titled "Offenses Against the Administration of Government," and in Part 5 of that chapter, which is titled, "Falsification in Official Matters." Further, the tampering with evidence section appears alongside other crimes that impose criminal liability on a person for taking affirmative actions to interfere in the truth-finding process, such as making a false or inconsistent material statement under oath, Utah Code Ann. § 76-8-502 (LexisNexis 2017); making a written false statement in an official proceeding, *id.* § 76-8-504; making a false statement in a preliminary hearing, *id.* § 76-8-504.5; providing false or misleading material information, *id.* § 76-8-504.6; providing false information to law enforcement officers, government agencies, or certain specified professionals, *id.* § 76-8-506; providing false personal information to a peace officer, *id.* § 76-8-507; tampering with a witness, *id.* § 76-8-508; tampering

(continued…)

commits a quintessentially dishonest act; any of the specific actions taken by a perpetrator of this crime—altering, destroying, concealing, or removing an item—are done with the goal to deceive investigators about a statutorily salient aspect of the item itself. *See Robinson*, 2015 UT 69, ¶¶ 24–25; *see also United States v. Lockwood*, No. 12-CR-20070, 2013 WL 3964779, at *2 (C.D. Ill. July 31, 2013) (concluding that obstruction of justice—defined under state law as implicating a person who, "with intent to prevent the apprehension or obstruct the prosecution or defense of any person, . . . knowingly destroys, alters, conceals, or disguises physical evidence, plants false evidence, or furnishes false information"—was a crime that required proving a dishonest act or false statement under rule 609(a)(2) of the Federal Rules of Evidence (quotation simplified)); Stuart P. Green, *Deceit and the Classification of Crimes: Federal Rule of Evidence 609(A)(2) and the Origins of* Crimen Falsi, 90 J. Crim. L. & Criminology 1087, 1123 (2000) (suggesting that the conduct underlying "the modern offenses of perjury, obstruction of justice, fraud, false weights and measures, and false claims" fall into the grouping of crimes involving deceit, or crimen falsi); *cf. State v. Kennedy*, 17 A.3d 293, 296 (N.J. Super. Ct. App. Div. 2011) (concluding in the context of a statute requiring forfeiture of public office or employment for persons convicted of "an offense involving dishonesty," that the offense of tampering with physical evidence is "an offense involving dishonesty" because it involves "deceptive conduct designed to obstruct the administration of justice"); *Bolus v. Fisher*, 785 A.2d 174, 178 (Pa. Commw. Ct. 2001) (stating, in the context of a state constitutional provision regarding disqualification from public office for persons convicted of an "infamous crime," that tampering with physical evidence is a crimen falsi offense

---

(…continued)
with a juror, *id.* § 76-8-508.5; falsifying or altering a government record, *id.* § 76-8-511; impersonating an officer, *id.* § 76-8-512; and providing false judicial or official notice to another, *id.* § 76-8-513.

because it is "an attempt to obstruct justice and inherently involves dishonesty"), *aff'd*, 798 A.2d 1277 (Pa. 2002) (per curiam).

¶23 Nonetheless, York encourages us to decide that an attempt to conceal a piece of evidence to impair its availability in an investigation is not a dishonest act. She also contends that if tampering with evidence qualifies as a dishonest act, "virtually every crime" will be an impeachable offense under rule 609. We are unpersuaded.

¶24 For one thing, *Robinson* appears to preclude the kind of as-applied analysis York requests that we undertake. *Robinson* interpreted the phrase "dishonest act or false statement" in rule 609(a)(2) as requiring courts to determine only whether the elements of the statutory offense require the State to prove that the defendant committed a dishonest act. *Robinson v. Taylor*, 2015 UT 69, ¶ 22, 356 P.3d 1230 ("Only when the elements of the crime require proving a dishonest act or false statement can a prior conviction be automatically admitted into evidence."); *id.* ¶ 25 (explaining that "it is the elements of the criminal act that determine its admissibility, not the manner in which the offense is committed"); *see also* Fed. R. Evid. 609 advisory committee notes to 2006 amendments (emphasizing that whether a prior conviction required the fact-finder to find a dishonest act or false statement ordinarily should be readily apparent from the elements of the crime itself and that the rule "does not contemplate a 'mini-trial' in which the court plumbs the record of the previous proceeding to determine whether the crime was in the nature of *crimen falsi*"). Indeed, in *Robinson*, the court conducted a high-elevation analysis by succinctly concluding that even if the offense for which the defendant had been convicted could have been done in a deceitful way, it was not admissible under rule 609(a)(2) because "elements of a dishonest act or false statement" were not included "as part of the statutory offense" at issue. *See* 2015 UT 69, ¶ 26. Here, Boyfriend was convicted for evidence tampering under section 76-8-510.5. And because we have concluded that evidence tampering is a

crime that, at its core, is one of deceit requiring proof of a dishonest act to prove the statutory offense, we have no occasion to delve more deeply than that. *See id.*; *see also* Fed. R. Evid. 609 advisory committee notes to 2006 amendments (suggesting that a court need not inquire further for purposes of rule 609(a)(2) where the statutory elements of an offense readily indicate that the crime is one of dishonesty).

¶25 For another thing, we are unpersuaded that the variant singled out by York—concealment to impair availability—is not a deceptive act along with the other potential variations under the statute. The statute does not criminalize concealment committed for the sake of concealment alone, nor does it criminalize impairment of an item's availability apart from the purpose undergirding the concealment. Rather, the statute requires that the act of concealment occur in a particular context and for a particular purpose before conviction may result. Specifically, the statute requires the affirmative act (e.g., concealment) to occur in the context of a pending or an official investigation that the actor believes or knows to be afoot. *See* Utah Code Ann. § 76-8-510.5 (LexisNexis 2017). And it requires that the affirmative act be tethered to a specific purpose—one that, in the variant focused upon by York, is purposefully aimed at deceiving investigators about whether an item is available to serve as evidence in the proceeding or investigation. *Id.* In our view, an affirmative act of concealment that occurs in this context and for this purpose is an act of deceit and, like the other variations of evidence tampering that may be taken under the statute, constitutes a dishonest act that bears on a witness's ability to be truthful during an official proceeding such as a trial. *See United States v. Smith*, 551 F.2d 348, 362–63 (D.C. Cir. 1976) ("Even in its broadest sense, the term 'crimen falsi' has encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth."); *Robinson*, 2015 UT 69, ¶¶ 24–26.

¶26 Finally, we are unpersuaded by York's contention that, because there is some form of concealment in nearly every crime,

our conclusion would allow virtually every conviction to be used for impeachment. First, our ruling is confined to convictions under the evidence tampering statute. We do not conclude that an act of concealment committed in some relation to a crime transforms that crime into a crime of deception that would make the conviction impeachable under the rule; we conclude only that a conviction for tampering with evidence under section 76-8-510.5 constitutes a dishonest act as contemplated by rule 609(a)(2).

¶27    Second, it may be true that many, if not most, crimes are committed with some element of deception or concealment. But not every crime includes elements that require the State to prove, and the fact-finder to find, that the actor committed a dishonest act or a false statement before conviction may result. *See* Fed. R. Evid. 609 advisory committee notes to 2006 amendments (explaining that evidence of a conviction must be admitted under subsection 609(a)(2) "only when the conviction required the proof of . . . an act of dishonesty or false statement"; that evidence of "all other convictions is inadmissible under this subsection, irrespective of whether the witness exhibited dishonesty or made a false statement in the process of the commission of the crime of conviction"; and, providing as an example, "evidence that a witness was convicted for a crime of violence, such as murder, is not admissible under Rule 609(a)(2), even if the witness acted deceitfully in the course of committing the crime"). As a result, prosecutors will not be able to avoid the probative weighing required under subsection (a)(1),[5] as York

---

5. Convictions for crimes involving a dishonest act or false statement must be admitted under rule 609(a)(2) as being per se probative of credibility. In contrast, the admission of evidence of qualifying criminal convictions under rule 609(a)(1) of the Utah Rules of Evidence is subject to the weighing of the prejudicial effect of the evidence as against its probative value. *See* Utah R. Evid. 609(a)(1)(A) (requiring a balancing under rule 403 before admitting evidence of a witness's conviction of a crime

(continued…)

contends, simply by asserting that a prior crime was committed in some manner involving deception. Rather, to fall within rule 609(a)(2), prosecutors are required to readily demonstrate that a previous conviction required the fact-finder to find as an integral element of the crime that the actor committed a dishonest act or made a false statement. And, in our view, this is the pertinent point of *Robinson*'s interpretation of rule 609(a)(2).

¶28 Accordingly, we conclude that Boyfriend's tampering with evidence conviction is "a dishonest act" for purposes of rule 609(a)(2). The trial court therefore did not exceed its discretion in admitting the evidence of that conviction.

B.    False Information

¶29 York also argues that the trial court erred in admitting Boyfriend's purported conviction of providing false information. In particular, she contends that the document supplied by the State was insufficient to prove that conviction. We agree with York but conclude that the trial court's error in admitting the conviction for impeachment purposes was harmless.

¶30 York asserts that the document "does not clearly attest that [Boyfriend] was convicted of the offense of false information." She contends that it is not clear from the face of the document that it is a judgment of conviction and that, at best, the document indicates that Boyfriend was merely charged. She points out, for example, that Boyfriend indicated with his signature that he understood his rights, but she contends that the document does not clearly indicate what plea Boyfriend made or

(…continued)
punishable by death or more than one year of imprisonment); *id.* R. 609(a)(1)(B) (requiring admission of evidence of a defendant's conviction of a crime punishable by death or more than one year in prison if the probative value of the evidence outweighs its prejudicial effect to the defendant).

whether he was convicted. And she points out that the document "does not contain a judge's signature to the conviction"—that the judge's signature merely certifies after the fact that the document is "a true copy of the original on file."

¶31    We agree that the document contains several ambiguities that preclude it from serving as evidence of a conviction. While the document contains some details that suggest Boyfriend was convicted—such as the case number, the charge listed as "False info," a notation of "GP" in the plea section, and the reference to an order to pay $402 under the heading "Sentencing"—the document on its face does not identify itself as a judgment of conviction, and there is no signature from a judge memorializing a conviction. Indeed, the document does not even provide a place for a judge's signature. *See State v. Stewart*, 2011 UT App 185, ¶¶ 8–10, 257 P.3d 1055 (concluding that a minute entry that indicated the defendant "pleaded guilty to retail theft and was sentenced by the court," while "strongly suggest[ing] the defendant was convicted and sentenced for theft," was not sufficient to prove the defendant's previous alleged theft conviction because it was not "a written, signed judgment of conviction"); *State v. Anderson*, 797 P.2d 1114, 1117 (Utah Ct. App. 1990) (explaining in the context of using a previous conviction to enhance a penalty that "a judgment of prior conviction" must be "written, clear and definite, and signed by the court"). It was therefore error for the court to rely on this document as sufficient proof of the alleged conviction.

¶32    Nonetheless, we conclude that the error was harmless in light of the other evidence in the case because it was "sufficiently inconsequential [such] that there is no reasonable likelihood that it affected the outcome of the proceedings," and we affirm on that basis. *See State v. Clark*, 2016 UT App 120, ¶ 7, 376 P.3d 1089 (stating that "an evidentiary error cannot result in reversible error unless the error is harmful" (quotation simplified)); *see also* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶33   To begin with, there was ample evidence from which the jury could have concluded that York knew Boyfriend was hiding in the trailer at the time the officer questioned her about Boyfriend's whereabouts. It was undisputed that Boyfriend was discovered hiding in the trailer shortly after the officers arrived, and the transporting officer testified that York stated that she "didn't open the [trailer] door for [Boyfriend]," because Boyfriend "was there the whole time"—statements that, in context, would have permitted the jury to infer that York essentially admitted that she knew Boyfriend was hiding in the trailer when Officer Bryner questioned her at the campsite. In addition, Officer Bryner testified that after he informed York and her friend that they had overstayed their welcome, the women began to pack things inside the trailer, "leaning all the way into [it] to put things inside," and that they continued to do so between the time he checked his vehicle's computer for information about them and shortly before he went back to York to question her about Boyfriend's whereabouts. Both officers also testified that, when they did look in the trailer, nothing obstructed their view of Boyfriend—that Boyfriend was in full, plain view, and that due to the small size of the trailer, Boyfriend's feet were literally at the trailer door. And the officers discovered Boyfriend mere minutes after checking York's information, during which time Officer Bryner kept a clear view of the trailer. All of this evidence taken together would have permitted the jury to infer that York had observed Boyfriend hiding inside of the trailer before Officer Bryner questioned her.

¶34   Moreover, to the extent the alleged conviction might have affected the jury's perception of Boyfriend's credibility and thereby influenced its verdict, the alleged false information conviction was cumulative of the more recent evidence tampering conviction, which suggested that Boyfriend might be less than credible and which we have affirmed as admissible for impeachment purposes under rule 609(a)(2). Also, the alleged conviction was not the only evidence before the jury that would have drawn Boyfriend's credibility into question. The State elicited testimony suggesting that, because York and Boyfriend

were involved in a relationship and Boyfriend admitted that he did not want York to get in trouble, Boyfriend had a motive to lie. The jury also had before it the overall narrative of the events that occurred at the campsite, including Boyfriend's testimony that he purposely hid from the police because he knew there was a warrant for his arrest.

¶35    As a result, given the overall circumstances and evidence in the case, we conclude that the court's error in admitting evidence that Boyfriend had been convicted of false information was "sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings," and that the error was therefore harmless. *See Clark*, 2016 UT App 120, ¶ 7 (quotation simplified). Accordingly, we decline to reverse York's conviction based on this error.

## II. The State's Felony Reference

¶36    Finally, York argues that the State improperly referred to Boyfriend's tampering with evidence conviction as a felony rather than a misdemeanor. She contends that the parties "had agreed that the State could tell the jury [that Boyfriend] was convicted of a misdemeanor," not that the crime had originally been charged and convicted as a felony but was later reduced to a misdemeanor.

¶37    As an initial matter, we are not convinced that the State committed prosecutorial misconduct by telling the jury that the conviction was initially a felony but was later reduced to a misdemeanor. The parties stipulated that the conviction was ultimately a class A misdemeanor, but the parties' stipulation did not address whether the State could mention that the crime was originally charged and convicted as a felony.

¶38    Nevertheless, for a reversal on this basis, York must persuade us that the felony reference was prejudicial. *See State v. Ashcraft*, 2015 UT 5, ¶ 31, 349 P.3d 664 (explaining that "to sustain a reversal on an assertion of prosecutorial misconduct," a defendant must establish that, "under the circumstances of the

particular case, the error is substantial and prejudicial" (quotation simplified)); *State v. Thompson*, 2014 UT App 14, ¶ 83, 318 P.3d 1221 (instructing that "in assessing the prejudicial effect of prosecutorial misconduct, we must view [the offending] statements in context of the arguments advanced by both sides as well as in context of all the evidence" and that "if proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial" (quotation simplified)).

¶39 York has not done so. The tampering with evidence conviction was admitted only to impeach Boyfriend, and it is unlikely that the jury's view of York's guilt was influenced in a substantive way by hearing that Boyfriend's conviction was originally a felony conviction before being reduced to a misdemeanor conviction. Regardless, the conviction still suggested that Boyfriend might be less than credible, and it strains credulity to believe that the jury convicted York because it perceived Boyfriend as a felon. Moreover, as discussed above, *supra* ¶¶ 33–34, the felony reference was cumulative of other evidence bearing on Boyfriend's credibility, and there was ample evidence from the testimony provided at trial to support York's conviction. *See Thompson*, 2014 UT App 14, ¶ 83. For these reasons, we are unpersuaded that the felony reference was prejudicial.

## CONCLUSION

¶40 We conclude that the trial court did not exceed its discretion in admitting under rule 609(a)(2) Boyfriend's conviction of tampering with evidence. We also conclude that even though the trial court erroneously admitted Boyfriend's alleged false information conviction, the error was harmless. Finally, we conclude that the State's reference to Boyfriend's tampering with evidence conviction as a felony was not prejudicial. Accordingly, we affirm.

———————